KENTUCKY AIRPORT ZONING
COMMISSION, Appellant,

v.

KENTUCKY POWER COMPANY,
Appellee.

Court of Appeals of Kentucky.

March 25, 1983.

Charles D. Moore, Jr., Dept. of Transp., Frankfort, for appellant.

Donald Combs, Stephens, Combs & Page, Pikeville, E. Gaines Davis, Jr., Frankfort, for appellee.

Before COOPER, HOGGE, and HOWERTON, JJ.

HOWERTON, Judge.

The Kentucky Airport Zoning Commission appeals from a judgment of the Franklin Circuit Court invalidating four of the Commission's orders which had required the Kentucky Power Company to mark and relocate electric power lines near airports at Pikeville and Hazard, Kentucky. The trial court declared KRS 183.861 to 183.873 to be unconstitutional. It further concluded that the Commission had exercised its power arbitrarily and unreasonably in adopting its regulations, even if the legislative delegation was constitutional. The court further concluded that the Commission's orders were not supported by any findings of fact which would permit judicial review, that the Commission denied the Power Company due process of law in the manner in which it conducted its hearings, and that the requirements imposed upon the Power Company constituted a taking of property without compensation.

The Commission makes an issue of each of the foregoing conclusions, and it argues that each conclusion was erroneous. We do not find the statutes unconstitutional, but we generally agree with the trial court as to its remaining four conclusions. We will consider the manner in which the Commission has exercised its delegated powers and the issue of whether the Commission's orders were an unconstitutional attempt to take property without just compensation. Since we are generally affirming the judgment of the trial court, we see no need to discuss the issues of judicial review or due process.

Kentucky Power Company has owned an easement and maintained transmission lines in the locations now challenged since long before the airports were developed or the Zoning Commission came into existence. The line known as Pikeville South was erected in 1944. It is located 3,215 feet south of the Pikeville Airport runway. The line was temporarily relocated in 1970 to facilitate the widening of U.S. Highways 23 and 460. Approximately 300 feet of a mountain top was removed on the east side of the Big Sandy River over which the transmission lines crossed. The approaches to the airport follow the river. The work was completed in 1973, and a steel tower was erected on a bench cut into the mountain. The power line was put back in its previous location but attached to the tower. The net effect of the reconstruction was to lower the line where it crossed the river, although the top of the tower protrudes into the zoned air space.

The situation with the line known as Pikeville North is somewhat similar. The line was constructed in 1922. It was rebuilt in 1940; and in 1967, it was redesigned to carry more voltage. A static line was installed at that time, and it is located approximately 12 feet above the energized wires. Zoning jurisdiction was asserted over this line in May 1969.

The line was lowered approximately 30 feet in 1972 as a result of the highway construction. It is now situated roughly 180 feet above the level of the airport runway. The line is located approximately 2.5 miles north of the runway.

The Commission's regulations in 1972 required a permit for structural alterations, but the definition of the phrase "alter a structure" included only an increase in height. The definition was changed in 1979 to include decreases in height.

The transmission line in the Hazard area was placed in service in 1941, eight years before the development of the airport. In 1963, the construction of Ky. Highway 15 required the line to be elevated 60 feet. The line was reconstructed in 1967 and was raised an additional 33 feet. In 1976, the construction of the Hazard Bypass required that the line be elevated an additional 13 feet. The line is located on the opposite side of a mountain from the airport. The line would create no obstruction to air navigation, except that the State cut through

the mountain in 1976 and exposed the line to air traffic electing to fly through this cut. The cut for the highway is not a legitimate approach to the airport on air navigation maps and charts.

The orders of the Commission directed the Power Company to mark its transmission lines with large orange balls. It also directed the Company to paint its tower at Pikeville South and to install a strobe light on the top of the tower. The orders also directed the Company to relocate the Hazard and the Pikeville South lines, but the Commission temporarily suspended these requirements for further consideration. The estimated cost for marking each line is $5,000.00, and the estimate for relocating the line at Pikeville South ranged from $1,600,000.00 to $3,500,000.00, depending upon the route selected.

■ The Kentucky Airport Zoning Commission was established by KRS 183.861. The act empowers the Commission "to issue such orders, rules and regulations pertaining to the use of land within and around all publicly owned airports within the state as will promote the public interest and protect and encourage the proper use of such airports and their facilities." The legislature found and announced in KRS 183.866 that "an airport hazard endangers the lives and property of users of the airport and of occupants of land in the vicinity." It also found that "such hazards are not in the interest of the public health, public safety or general welfare." It further found that "any obstructions to the use of navigable air space destroy and impair the safe use of such air space thereby endangering aircraft and are not in the interest of public health, public safety or general welfare."

KRS 183.867 and 183.868 pertain to the establishment of zoning jurisdiction and regulations. KRS 183.867(1) reads in part as follows:

The commission shall require that every public airport in the state file with it, from time to time, as required, maps showing the airport and area surrounding such airport used for approach or landing purposes. The commission shall thereaft-er designate on such maps, by reference to the regulations or standards promulgated by the federal aviation administration concerning the area required for the safe maneuvering approach and landing of aircraft, the area over which jurisdiction will be assumed for zoning purposes. . . .

Subsection (2) reads, "The commission may adopt such regulations pertaining to the zoning of areas over which jurisdiction is assumed as will provide for the proper and safe use of such area and airport."

KRS 183.868 specifies in part as follows:

In addition to considering the regulations or standards promulgated by the federal aviation administration in zoning the use of land and structures in areas over which jurisdiction is assumed, the commission shall consider among other things the safety of airport users and surface persons and property, the character of flying operations conducted at the airport, the nature of the terrain, the height of existing structures and trees above the level of the airport, . . . .

When we consider the totality of the legislative findings, the need for zoning and regulation of hazards around airports, and the actual delegation of authority to the Commission, we can not say that the delegation is unconstitutional. We ·conclude that the delegation of authority is reasonable under the circumstances. The delegation to the Airport Zoning Commission is more specific and directive than the delegation declared to be constitutional in *Kentucky State Board of Business Schools v. Electronic Computer Programming Institute, Inc.*, Ky., 453 S.W.2d 534 (1970).

The problem we find with the operation of the Commission is in the manner in which it has carried out its delegation of authority. The statutes require consideration of hazards on an airport-by-airport basis. The character of flying operations, the nature of the terrain, the length of the runways, and the existence of structures and trees are certainly different between Paducah and Pikeville, and between Hopkinsville and Hazard. The Commission is to

have a map of each airport and the area surrounding it on which it can thereafter designate the area required for safe maneuvering based on regulations and standards promulgated by the Federal Aviation Administration.

The Commission has summarily assumed jurisdiction over all air space which lies above a line extending outward and upward from an airport runway at a slope of 100:1 feet for a horizontal distance of 20,000 feet. Thereafter, the slope is at a ratio of 30:1 feet for an additional horizontal distance of 24,000 feet. Permits are required for construction of all new structures and for the alteration of any old structures located within that air space. Since the Commission has assumed jurisdiction over all air space over 200 feet above ground level, some inconsistency seems apparent. The altitude for a structure located 44,000 feet from an airport runway could extend upward to 1,000 feet based on the adopted ratios.

The Federal Aviation Administration has assumed jurisdiction and requires notification when structures are to be above a height determined by a 50:1 slope for airports with runway lengths comparable to Hazard and Pikeville. If the Kentucky Airport Zoning Commission had adopted the federal standards, the only structure of the power company to penetrate any zoned air space would be the tip of the tower at Pikeville.

We will not say that a 100:1 slope for 20,000 feet is arbitrary or unreasonable for the Hazard and Pikeville air space. We can say, however, that the Commission has not made any separate evaluation or finding for those air spaces which indicate a justification for such regulations. We also note that the Kentucky Department of Transportation, of which the Commission is a part, has warned all aircraft not to attempt to land at Pikeville on a more gradual slope than 20:1. The airport directory also advises pilots to approach the Hazard Airport through the valley rather than through the highway cut.

Regulations are presumed to be valid, but they must be consistent with the statutes authorizing them. In this case, we can only conclude that the Commission has not complied with the statutes in establishing its regulations and ratios.

No one should conclude that the Commission may not impose stricter requirements than those established by the Federal Aviation Administration. The field has not been preempted. *Southeastern Display, Inc. v. Ward,* Ky., 414 S.W.2d 573 (1967). The statutes do not require the Commission to be bound by the F.A.A. standards, but they do require the Commission to consider them along with other factors. The federal standards, however, do indicate what generally might be reasonable. A blanket standard of 100:1 for all airports in Kentucky is patently unreasonable, and the statutes require the Commission to establish what is reasonable for each airport.

The Commission argues that the lines at Hazard come within its jurisdiction because they are over 200 feet above the ground. This is true, and we make no determination that the 200-foot limit is reasonable or unreasonable. We do note, however, that the location of the power lines would in no way affect navigable air space if the mountain had been left intact by the Kentucky Department of Transportation. We also note that the higher elevation was required by the Department.

Even if we permitted the application of the Commission's regulations and upheld their orders on the basis of jurisdiction, we would have to affirm the judgment of the trial court on the basis that the Commission's orders would unconstitutionally take the Power Company's property without just compensation. The Commission argues that it can require companies and individuals to give up property rights or to expend funds to remove, alter, or mark facilities through police powers. The exercise of police powers, unlike the power of eminent domain, does not require the payment of compensation. *V.T.C. Lines v. City of Harlan,* Ky., 313 S.W.2d 573 (1957).

The Commission argues that the case of *Moore v. Ward,* Ky., 377 S.W.2d 881 (1964), is in point. *Moore* was the case which upheld the Commonwealth's exercise of police power to regulate and prohibit billboards along certain highways. We recognize that the Commission may exercise its zoning regulations through police powers in making prospective applications. This would allow a prevention of the erection of obstacles in a flight path or it might require the installation of certain markings and safety devices when tall objects are allowed to be constructed within a reasonable proximity to an airport. Neither the Airport Zoning Act nor the Billboard Act, however, allow a retrospective operation which would affect or impair existing rights. *See, Moore, supra,* for its application to the Billboard Act. Chapter 100 of the Kentucky Revised Statutes permits various types of land uses and restrictive zoning. Zoning certainly permits limitations on the free use of one's property without compensation, but such restrictions are justified to promote the best utilization of all of our land and to protect all properties from ruinous neighboring activities or blights. Nevertheless, the Act does allow a denial of an expansion or development of a nonconforming use or the rebuilding of a nonconforming structure.

When a public authority, whether it be an airport board or an airport zoning board, retrospectively takes or impairs one's free use of his property for the benefit of a special group, there must be just compensation. This requirement is recognized through cases involving eminent domain, statutes allowing for eminent domain, and cases recognizing a right of reverse condemnation. *Shipp v. Louisville and Jefferson County Air Board,* Ky., 431 S.W.2d 867 (1968); *Bowling Green-Warren County Airport Board v. Long,* Ky., 364 S.W.2d 167 (1963); and *U.S. v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1945). In a somewhat similar situation, the State of California has permitted the elimination of hazards by the exercise of police power to the extent such is legally possible, but otherwise by condemnation where constitutional limitations prevent the taking without compensation. *Sneed v. County of Riverside,* 218 Cal.App.2d 205, 32 Cal.Rptr. 318 (1963).

KRS 183.872 specifically grants to the Commission the right of eminent domain to acquire property rights. The statute provides for a taking by zoning regulations; but where constitutional limitations would prevent such a taking, the Commission "may acquire by purchase, grant, condemnation or otherwise, such air right, easement, or other estate or interest in the property or nonconforming use in question as may be necessary to effectuate the purposes of this chapter."

The Commission argues that its orders do not take the Company's property. It is true that the Power Company will still have its power lines and easements, but the Commission's orders nevertheless place a servitude upon the Company's property which did not exist, and the orders would require the Power Company to spend substantial sums which devalue the easement and property rights. The proposed orders of the Commission would constitute a taking of the Power Company's property rights.

We hold that the Airport Zoning Act is constitutional, but that the Airport Zoning Commission must comply with the guidelines of the statutes before it can enforce its regulations. We further hold that the Commission may not enforce markings or relocations of the Power Company's existing facilities without paying the Company just compensation.

The judgment of the Franklin Circuit Court is affirmed to the extent that it is in agreement with this opinion. It is reversed to the extent that it declared the Airport Zoning Act to be unconstitutional.

All concur.