**CITY OF BOWLING GREEN, Kentucky; County of Warren, Kentucky; and Bowling Green–Warren County Airport Board, Appellants,**

v.

**Dr. Roy G. COOKSEY, Appellee.**

**No. 91–CA–1672–MR.**

Court of Appeals of Kentucky.

Nov. 13, 1992.

Rehearing Denied Feb. 26, 1993.

Discretionary Review Denied by Supreme Court Aug. 25, 1993.

Lee Huddleston, Huddleston Bros., Attorneys, Bowling Green, for appellants.

Joseph R. Kirwan, Hixson, Downey and Travelsted, Bowling Green, for appellee.

Before DYCHE, McDONALD and SCHRODER, JJ.

McDONALD, Judge.

The City of Bowling Green, Warren County and the Bowling Green–Warren County Airport Board ("board") appeal from the circuit court's judgment dismissing their petition for condemnation of 24.59 acres of land owned by appellee, Roy G. Cooksey.

In October, 1989, members of the board began negotiating with Cooksey regarding the possibility of purchasing 24.59 acres of his 101–acre farm upon which he resides and raises beef cattle. Cooksey suggested he would be willing to enter into an agreement whereby he would "trade" the desired property in exchange for the same amount of property adjoining his farm. Apparently an attempt to accomplish this was made but fell through when the board refused to acquire the "trade" property at the price requested by its owner.

The board then voted to condemn the property "to establish a safety zone, among other public purposes and uses...." After that, the Warren County Fiscal Court and the Bowling Green Board of Commissioners passed a joint ordinance and order voting to condemn the land for a "public airport safety zone and other public purposes...." At this point, Cooksey offered to restrict the land to agricultural use, to give the airport a noise easement and/or an easement prohibiting trees, residential development, and the erection of any structures on the property up to the airport's building restriction line. The board, although it offered to lease the property back to Cooksey with the same restrictions, refused to accept anything less than fee simple title to the property. Appellants then filed a condemnation petition. Upon Cooksey's objection, a trial was conducted pursuant to the Eminent Domain Act.

The evidence revealed that Cooksey's land would be used solely for a buffer zone as no structures (not even a future proposed taxiway) would be located within the boundaries of his property.

The trial court made extensive findings of fact, clearly supported by substantial evidence of record. In its final factual conclusion the court stated:

> There is no proof that the land in question is needed within the reasonably foreseeable future by the airport to provide use as a public purpose, a safety clear zone, a noise buffer zone, potential development, or any other purpose or cause. The Court finds that a taking of this property would bear an unreasonable relationship to the public interest. The Court finds that the burden of showing that the public agency is not permitted to take the property is upon the person objecting, in this case Dr. Roy Cooksey. The Court finds that he has carried this burden by clear and convincing evidence. The Court finds as a matter of law based upon the evidence and exhibits introduced at the trial of this action that there can be no taking of this property.

■ The Kentucky Constitution and the Eminent Domain Act of Kentucky (KRS 416.540 *et seq.*) require that the taking of private property by government must be for a "public purpose." Under KRS 416.-550 the condemnor cannot acquire the property in fee simple if it can obtain access or use of the property through other privileges or easements. The evidence not only reveals that there is no intended public use but also a willingness on the part of Cooksey, the owner/condemnee, to give the airport an easement and restrict the area in question from any building. Cooksey even granted the airport authority to remove any and all trees that were considered offending and permission to replace the fence if it desired.

The evidence clearly revealed that the intended actual use of the land was to remain the same, i.e., for agricultural purposes, and the government was even prepared to lease it back to its current owner to continue using it in the present manner, i.e., raising beef cattle. The evidence further revealed that there was not a safety or noise problem associated with the land, and that obtaining the land for the claimed purpose of providing a clear zone or noise

buffer zone was not truly the motive for the acquisition of the property. While "nonuse," as urged by appellants, may serve a legitimate "public purpose," the appellee has shown that the current use (to which the land would willingly be restricted) was completely compatible with the public purposes appellants are purportedly seeking to achieve. Importantly, the appellants and their experts all concede this fact to be true.

■ The constitution, statutes and case law of Kentucky necessarily imply the exercise of good faith by governmental authority in using its power to condemn and/or take private property from its citizens. While it has been concluded that the "necessity" for the exercise of eminent domain is one primarily and almost exclusively for the legislative branch, the question of whether the proposed condemned property is to be used for a "public" purpose is one to be determined by the judiciary. *See e.g., Idol v. Knuckles,* Ky., 383 S.W.2d 910 (1964); *Jefferson County v. Clausen,* 297 Ky. 414, 180 S.W.2d 297 (1944); *Spahn v. Stewart,* 268 Ky. 97, 103 S.W.2d 651 (1937).

In *McGee v. City of Williamstown,* Ky., 308 S.W.2d 795, 796 (1957), emphatically our highest Court says:

> It is a general principle of law that the Legislature cannot authorize the taking of property by eminent domain *in excess* of the particular public *need* involved. (Emphasis added.)

*McGee* further states emphatically that "ordinarily the need for the taking of land for a public purpose ... is a question of law for the court...."

■ The right of eminent domain may be exercised if the condemnor cannot obtain from the property owner by agreement the property right or easement necessary. If unable to reach an agreement, the condemnor must file a petition pursuant to KRS 416.570. The landowner having filed a response contesting the condemnation is entitled to a hearing before the trial court regarding the petitioner's right to condemn. The Warren Circuit Court conducted a proper hearing in this matter and determined there was no public use intend-

ed for the land sought to be condemned, and that the taking of the property would bear an unreasonable relationship to the public interest.

In its findings of fact, conclusions of law and judgment, the trial court thoroughly discussed the evidence presented. We must observe proper deference to the role of the trial court as factfinder. *Commonwealth Transportation Cabinet Department of Highways v. Taub*, Ky., 766 S.W.2d 49 (1989), and CR 52.01.

Because there is credible, competent and substantial evidence that the acquisition of this land by fee simple title is not necessary for an intended public purpose, this Court is unable to conclude that the trial court's findings of fact were clearly erroneous. Thus, it is our conclusion that the dismissal of the petition for condemnation must be affirmed.

DYCHE, J., concurs.

SCHRODER, J., dissents by separate opinion.

SCHRODER, dissenting.

The question becomes whether or not the airport board has to wait until there are proposed changes in the surrounding area before it can condemn a noise zone or safety buffer around the airport. One only has to visit Kentucky's Greater Cincinnati Airport to see the wisdom of advanced planning. Numerous subdivisions have recently been built around that airport and as a result, there are now numerous complaints about noise with the increased air traffic, bigger and louder planes, and lengthened runways and taxiways. Had the planners seen the extent of growth and changes, and had the money to purchase land, a lot of waste and damage could have been prevented. Likewise, in the case of the Bowling Green–Warren County Airport Board, advance planning, in the form of their Master Plan Update, is not only desirable, but necessary. Any airport board that does not have such a plan is either remiss in their duties or facing a future closing. The importance of an airport to the Bowling Green and Warren County area cannot be ignored. Without planning for the future, the airport board would eventually need to locate on another site, scale down this airport's functions, or pay premium prices for future expansions which could be foreseen today. The law does not require governmental bodies wear blinders. In fact, under KRS 183.868, airport zoning is required to consider the future needs of the communities being served and the future development of the airport, including extensions to the runways, the size of the safe approaches, etc. KRS 183.872 allows the outright purchase or condemnation of approach protection where zoning protection or easements would not be adequate or where such restrictions amount to a taking for which the owner should receive just compensation. *Kentucky Airport Zoning Com'n v. Kentucky Power Co.*, Ky.App., 651 S.W.2d 121 (1983); *Bowling Green–Warren County Airport Bd. v. Long*, Ky., 364 S.W.2d 167 (1962).

The case of *Bowling Green–Warren County Airport Bd.*, *supra*, also taught us that if an airport board waits until the land is ready for development, it will have to pay subdivision prices, not farm land value, which is also an incentive to plan ahead.

Neither this court nor the trial court can say how wide a safety and/or noise buffer zone ought to be. That decision requires expert evaluation with the final decision with the airport board which controls the purse strings (KRS 183.133). Case law recognizes the well settled rule that it is a legislative function to determine "[t]he necessity or expediency of taking private property for such uses by the exercise of the power of eminent domain, the instrumentalities to be used, ..." (*Henderson v. City of Lexington*, 132 Ky. 390, 111 S.W. 318 (1908)) as well as the amount of land to be taken for the public use. *Kroger Co. v. Louisville & Jefferson County Air Bd.*, Ky., 308 S.W.2d 435 (1957). The court's only function on review is to determine whether or not the taking is for a public use or purpose (*Henderson, supra*) or "[w]here there has been a gross abuse or manifest fraud." *Kroger, supra*, at 439. The airport board can refer to the airport

zoning which, under KRS 183.868, takes into consideration:

> [a]mong other things the safety of airport users and surface persons and property, the character of flying operations conducted at the airport, the nature of the terrain, the height of existing structures and trees above the level of the airport, the *views of officials of the federal aviation administration* as to the safe approaches required for operations at the airport, the future development of the airport including extensions to runways that may be required, the density of dwellings that may safely be permitted in the area, protection of the public investment in the airport and its facilities, the interest of the public in developing a sound public air transportation system within the state and the views and opinions of those owning land in such area. (emphasis added)

In this case, the evidence shows that John Dempsey, Regional Director of the Federal Aviation Administration, recommended purchasing land along both sides of runway 3–21 for widening the shoulder and establishing a better safety and noise buffer zone. The Federal Aviation Administration (FAA) even went so far as to approve 90% of the funding for the purpose of acquiring the land extending 1,250 feet from the centerline of runway 3–21 (appellee's 24.59 acres).

The trial court was clearly erroneous when it equated a public use existing only if the airport board could show a structure or building to be built upon the appellee's parcel and in not recognizing a safety zone and/or noise buffer (as well as its width) as a legitimate legislative determination.

The majority agrees with the trial court's finding that the airport board could have taken or accepted less than a fee simple to accomplish the goal of providing a buffer zone. Even if the appellee had not tried to place restrictive conditions on the proposed easement, the airport board, not the property owner and not the court, has the sole authority to determine the nature and extent of the title need. In the case of *Craddock v. University of Louisville*, Ky., 303 S.W.2d 548 (1957), the University of Louis-ville wanted to purchase the land and lease it for $1.00 a year for a hospital to help serve U. of L. medical complex. The question arose as to whether the University could acquire a fee simple title which would allow future changes or fee simple on a condition that it be used for University purposes (similar to appellee's proposed restrictions). The Court held the University could acquire a fee simple absolute title and the decision as to how much (both quantity and quality) is to be purchased is for U. of L. *See also Kentucky Airport Zoning Com'n v. Kentucky Power Co.*, Ky.App., 651 S.W.2d 121 (1983), which recognizes that in takings of less than a fee simple absolute title, the only real concern of the court is that the public authority pay just compensation for that which they take. KRS 183.133(4) recognizes that it is the airport board's decision as to which rights are necessary to be purchased.

For the foregoing reasons, I would have reversed the Warren Circuit Court.