Winnie McGEE, Appellant,

v.

CITY OF WILLIAMSTOWN et al., Appellees.

Court of Appeals of Kentucky.

Oct. 4, 1957.

Rehearing Denied Jan. 31, 1958.

William F. Threlkeld, Williamstown, for appellant.

L. M. Ackman, Raymond R. Vincent, and John J. Blackburn, Williamstown, for appellees.

STEWART, Judge.

During the summer of 1954, after experiencing a severe water shortage for two years, the City of Williamstown deemed it expedient to enlarge its water supply by the construction of a supplemental reservoir near that city. Prior to this time the Department of Fish and Wildlife Resources of the Commonwealth of Kentucky had been pursuing a plan to create a lake near Williamstown as a conservation measure and had secured twenty-eight easements which represented most of the land needed. These easements were virtually unrestricted as to use. In 1954 the Department, having decided to abandon this project, was induced to assign, and it subsequently transferred, to the city the easements previously obtained by it for the lake site. Thereafter the City of Williamstown instituted condemnation proceedings to acquire four additional tracts from property owners who had refused the Department easements across their land.

The condemnation proceedings were instituted under the authority of KRS 87.-090 and in the manner provided in KRS 416.010 through 416.080. A petition was filed in the Grant County Court by the city against appellant, Winnie McGee, owner

of 33.84 acres sought to be condemned, commissioners were appointed to fix damages and issues were joined on the questions of necessity and of the extent of title to be taken to the lands by the city. The county court held that the building of the supplemental reservoir was a public necessity and adjudged that fee simple title to the property taken was in the city, subject to appellant's right to water her cattle from the reservoir. This ruling was appealed to the Grant Circuit Court which affirmed the order of the county court and in addition gave further water rights to appellant. A jury was then empaneled, damages in the amount of $2,280.-40 were assessed and a commissioner's deed which purported to convey a fee simple title was executed and delivered to the city.

Winnie McGee appeals, urging as grounds for reversal: (1) That the amount of land taken was excessive for the reasonably anticipated requirements of the city; (2) that the city should have been awarded only an easement in the land and not a fee simple title thereto; and (3) that the city before proceeding to condemn made no bona fide attempt to purchase either the land or a sufficient estate therein.

It is a general principle of law that the Legislature cannot authorize the taking of property by eminent domain in excess of the particular public need involved. However, the limitation upon the amount of property to be condemned for an acknowledged public improvement may not be based solely upon present conditions and requirements but a municipality may also procure land in contemplation of such reasonable necessity as may arise in the future. Ordinarily the need for the taking of land for a public purpose by a municipality is a question of law for the court, and evidence on this subject should not be heard before the jury for this would only serve to divert their minds from the single issue of compensation which they are to try.

Baxter v. City of Louisville, 224 Ky. 604, 6 S.W.2d 1074.

■ Municipal corporations are agencies of the state and when they declare through their constituted authorities that the taking of private property is requisite for an authorized public use, they exercise a public function and it is assumed that, as public agencies, they have carried out with wisdom and discretion the power lodged in them by the Legislature. The burden of showing the contrary is upon any person who objects to the proceeding. Jefferson County v. Clausen, 297 Ky. 414, 180 S.W.2d 297.

■ If the land condemned is not more than may be presumed necessary, this determination by the grantee of the power will not be interfered with, and it is only in those instances where the taking bears an unreasonable relation to the public interest or welfare that the courts will disturb its exercise. Faulconer v. City of Danville, 313 Ky. 468, 232 S.W.2d 80.

To sustain her argument of an excess appropriation appellant relies solely upon portions of the testimony of a consulting engineer of the city who was employed to advise it on the amount of water to be impounded. In arriving at the size of the reservoir to be constructed this witness estimated the city's water necessities over a thirty-year period. The thirty-year projection into the future is admittedly a customary procedure in planning water reservoirs. By taking the engineer's figure as to the total volume of the proposed reservoir when built and dividing this amount by the anticipated water consumption of the city for the year 1985 appellant argues the reservoir's capacity will be equal to eight times the potential needs of the city and therefore will be far in excess of any prospective municipal requirements. While the result of this calculation, arrived at by merely dividing the capacity of the new reservoir by the total number of users who will supposedly siphon water from it in 1985, is numerically correct, other dominant factors pointed out by this witness were given no consideration by appellant.

Gordon Gaither, the consulting engineer who testified in the capacity of an expert for the city, emphasized that good engineering practice demanded that the proposed water supply be adequate for a minimum of 30 years. However, nothing prevented the city from undertaking to impound a sufficient store of water to meet its wants for a much longer period of time. In fact, cities are building larger and larger reservoirs all the time. The engineer further testified that where a reservoir is fed by surface drainage, as will be the case with the reservoir here, this always results in silting which lessens the capacity of the pool. There will be a loss of water due to seepage, through absorption at the bottom and through leakage at the sides, and there will be an annual loss from evaporation over the entire surface of the reservoir. He also stated it would be wise upon the city's part to anticipate one, two or more consecutive droughts and also to be prepared for the normal ·increase of water customers and for augmented use by each customer. Gaither's estimate, his testimony disclosed, only took into account a 50 per cent increase in the amount of water now metered out by the one small factory located in Williamstown. He then called attention to the availability of this city for the location of new industries and stated that, if any new industries were added, such a fact would boost the ratio of water consumption.

■ The whole tenor of the expert evidence was that 250 million gallons, the anticipated capacity of the proposed reservoir, was a low estimate for the possible future needs of the city. When all the conditions of the engineer's proof, actual and contingent, are considered, it cannot be said that the city has gone beyond its future water requirements. No evidence was introduced by appellant to support her contention that the city in seeking to appropriate her land acted unwisely or without discretion. Since the burden of

showing an unauthorized exercise of the power of eminent domain by the city was placed upon appellant, and she has failed to sustain this burden, her first contention must be dismissed as groundless.

There is likewise no merit in the argument that the city obtained a fee simple title to appellant's acreage, although the conveyance to the city indicates this character of title was deeded to it. It is a well-settled rule of law in this state that a deed executed pursuant to a condemnation proceeding ordinarily conveys an easement in the condemned property. Rose v. Bryant, Ky., 251 S.W.2d 860. Even where the deed purports to convey a fee, the words of the deed are not controlling and the grantee may hold the property only as long as it is devoted to the purposes for which it was acquired. It is clear from the case law of this jurisdiction that upon the abandonment of an easement, the land will revert to the grantor or his heirs at law or his successors. Mammoth Cave Nat. Park Ass'n v. State Highway Commission, 261 Ky. 769, 88 S.W.2d 931.

However, while the easement under discussion is in full force and effect appellant does not have an unrestricted right of use of the property for which the easement was granted. This Court has held where the condemner has paid for the use of flooded lands, the judgment is determinative of the rights the owner of the remaining portion of the tract would have therein. Kentucky Water Service Co. v. Clark, Ky., 239 S.W. 2d 64. In the instant case the judgment of the Grant Circuit Court reserved to appellant stock watering and other privileges, subject to the rights of the city. Since appellant has been fully compensated for the taking of her land and is amply protected by the judgment as to certain benefits retained, and no evidence is presented which shows a threatened violation of her privileges, her assertion that the estate acquired by the city was excessive and constituted error cannot be sustained.

The remaining contention of appellant is that the jurisdictional requisite to the maintenance of an action to condemn land was not met, because it is asserted the city made no attempt in good faith to secure the property by contract. Under the authority of Howard Realty Co. v. Paducah & I. R. Co., 182 Ky. 494, 206 S.W. 774, it is admitted that when the owner is capable of contracting and the condemner makes no effort to acquire the land by agreement, the action must be dismissed for failure to meet this condition precedent to the institution of the condemnation proceedings.

In our opinion the evidence does not substantiate this claim. Prior to the commencement of the condemnation suit a committee duly appointed to represent the city offered a nominal consideration for the land, which appellant refused to accept. All the easements procured by the Department of Fish and Wildlife Resources and later assigned to the city were acquired practically as a gift. Subsequently, an offer of $50 an acre was made to appellant's attorney, her mother and her father, the latter person admittedly having the power to bind appellant by contract. This price per acre appeared to be a fair one in view of the fact that the record reveals the land sought from appellant contained no improvements, consisted of a rough hilly acreage, and constituted the least desirable portion of her farm. This second offer was rejected and later appellant tendered a writing to the city as a compromise offer in which she reserved numerous commercial and personal rights not retained by any of the other grantors of like easements. This proposal the city refused, and justifiedly so, even on the simple basis of public health and safety. Shortly thereafter proceedings were begun to condemn. In the light of the evidence recited we conclude there is nothing which would warrant a finding that the city did not undertake in a reasonable manner to purchase appellant's property by negotiation.

Wherefore, the judgment is affirmed.