(No. 35274.—

The City of Quincy, Appellant, *vs.* V. E. Best Plumbing and Heating Supply Co. *et al.*—(Moller & Vandenboom Lumber Company, Appellee.)

*Opinion filed November 18, 1959.*

James N. Keefe, Corporation Counsel, and Charles E. Binkert, both of Quincy, (William R. Dillon, and Alexander J. Resa, of counsel,) for appellant.

Delbert Loos, and Carl G. Schmiedeskamp, both of Quincy, (Loos & Schnack, and Schmiedeskamp, Jenkins & Robertson, of counsel,) for appellee.

Mr. Justice Hershey delivered the opinion of the court:

On May 20, 1957, the city of Quincy, hereinafter called the city, pursuant to the city council's approval of an off-street parking program, filed its petition in the circuit court of Adams County to condemn a number of parcels of prop-

erty to be improved as public parking facilities. Among these parcels was one designated as tract D-2 owned by Moller & Vandenboom Lumber Company, hereinafter referred to as the owner, and known as the lumber yard property. This owner filed a cross petition alleging the property, tract D-2, was, because of unity of use, an integral part of another property of the owner located three blocks distant and known as the mill property, and claiming damages to lands not taken. After hearing, the jury returned a verdict of $137,000 for the land taken and $30,000 for damages to that part of the unit not taken. The trial court entered judgment on the verdict and this appeal is taken by the city, pursuant to the provisions of the Eminent Domain Act, (Ill. Rev. Stat. 1957, chap. 47, par. 12,) directing that all appeals in eminent domain cases in a circuit court shall lie to this court.

During the course of pleading and proceeding below, the city moved that the cross petition of the owner, Moller & Vandenboom Lumber Company, be dismissed for the reasons that the owner was not entitled to damages to the property not taken, the damages claimed were speculative, that no condemnation was sought for any part of the mill property, and the mill property was not contiguous to the lumber yard property sought to be condemned. The trial court, upon hearing arguments of counsel only, denied the motion. The city now contends that the trial court erred in denying the motion, and in permitting a full trial upon the claim of the owner that the taking of its lumber yard property damaged its mill property, several blocks away.

We have previously determined that in order to recover damages in an eminent domain proceeding for property not actually taken, it must appear that this and the condemned land are contiguous, that is, they are either physically joined as a single unit or so inseparably connected in use that the taking of one will necessarily and perma-

nently injure the other. *City of Chicago* v. *Equitable Life Assurance Society of the United States,* 8 Ill.2d 341.

Only two of the witnesses presented by the owner offered any evidence in regard to damage to the mill property by the taking of the lumber yard property, or any unity of use. Lawrence Moller, president of the owner, described the physical plant and the use of each of the two properties. He related the interchangeable employment of the personnel between the properties, and that 40 to 50 per cent of the material stored in the yard was processed and used in manufacture at the mill, for the use of their eight nearby lumber yards. The mill is not adequate in size to store all needed materials, and all offices are located in the yard.

Everett Talcott, a professional appraiser, had inspected the properties and found the highest and best use to be as part of a lumber distribution business. He found the properties to be a unit, the use of only one of which would restrict the business operation. It was his opinion that to consolidate the business on the mill property would require a disposal of the mill equipment, and that taking the yard would damage the mill property by $44,000.

Two ordinances of the city of Quincy were introduced into evidence. One prohibited the operation of a lumber business, such as this one, without first obtaining a permit signed by the mayor and city clerk, and approved by the fire commissioners of the city. The other prohibited a lumber yard within 275 feet of a public hospital within the city of Quincy.

These ordinances do not prohibit the establishment of a new lumber yard within the city of Quincy. There is no evidence that a suitable place to relocate the lumber yard facilities could not be obtained. Only Talcott testified that the taking of the yard would damage the mill. We fail to see how the mere facts that there was little or no duplication of use or facilities upon each property, that all sales

were made from the lumber yard, that the office was only on the lumber yard property, and that the operations conducted on each property were an integral part of the one unified business, render one property necessarily and permanently damaged by the taking of the other. Such an assumption would presuppose that no area or site was available at all to re-establish the lumber yard operation and facilities. The owner has not met this burden and these properties are not proved to be *contiguous* within the requirements laid down by this court. The most that can be said is that these properties are convenient and beneficial to one another, as were the properties in the *City of Chicago* v. *Equitable Life Assurance Society,* 8 Ill.2d 341. They cannot, for the purpose of this proceeding, be considered as a single property.

On the original hearing to strike the cross petition, only arguments of counsel were heard. The court should then have heard evidence upon the issue of contiguity and it erred in not doing so.

Upon the trial of this cause the court did receive evidence relating to the contiguous nature of these properties, but the evidence produced failed to sustain the burden of the owner upon the cross petition. The owner having failed to sustain the burden of proving the two properties to be contiguous, the court should not thereafter have permitted the receipt or consideration of evidence as to the damage sustained by the mill property in the taking of the lumber yard. The city objected to the introduction of evidence relative to any severance damage, and to instructions in that regard. The city's post-trial motion prayed the court to vacate the judgment both as to compensation for the property taken and for damage to the property not taken, and renewed the city's plea that the cross petition be stricken. The court erred in receiving evidence as to the damage sustained by the mill property not taken, and in denying the prayer of the post-trial motion to vacate that portion of the

judgment. (*City of Chicago* v. *Equitable Life Assurance Society*, 8 Ill.2d 341.) In addition, upon the state of this record the court should have stricken the cross petition upon the renewal of the motion in the post-trial proceedings.

The owners assert, however, that the city cannot now attack the verdict awarding damages under the cross petition for the reason that the city, by its conduct of the trial, waived its motion to strike, and waived the relief sought in its post-trial motion. The city made proper objections to the evidence produced and to the instructions offered in relation to the damage to property not taken. Moreover, the city had no alternative but to proceed with the trial of the cause after the court denied its motion to strike the cross petition, as such order was not final and appealable. (*Chicago Housing Authority* v. *Abrams*, 409 Ill. 226.) The issue was not waived by the city, and was preserved for appeal.

The city contends that the trial court erroneously permitted counsel for the owner to bring to the jurors' attention the fact that any compensation they might award would be paid out of parking revenue, and consequently not be paid from taxes. It appears that upon *voir dire* examination the court several times permitted counsel for the owner, over objection, to inquire if the prospective jurors knew that payment of the bonds voted to defray the cost of acquiring the property would be paid from parking meter revenues, pledged to pay these bonds. The city argues that such examination inferentially informed the jury that its verdict would not be paid from taxes. We have held that a jury in a condemnation suit is called on only for the purpose of finding values and fixing damages, and this narrow issue cannot be broadened nor the verdict influenced by the interjection of matters calculated to be prejudicial. How the judgment is to be paid is immaterial and must not be brought before the jury. On *voir dire* an attorney has the right to make such rea-

sonable inquiry as will intelligently permit him to exercise his right to peremptory challenge. The right goes no further, and if judicial discretion permits the introduction of such issues as abuse the right of reasonable inquiry, a reversal is in order. (*St. Clair Housing Authority* v. *Quirin,* 379 Ill. 52.) The question propounded by the attorney for the owner could be calculated only to insure that the jury knew from where the money would come to pay its verdict, and to inferentially inform it that taxes would not thereby be increased or used. To deny this inference, is to be blind to reality.

The owner insists that the question was a reasonable inquiry to determine if any of the jurors owned any of the bonds issued and sold for this purpose, and to determine if their verdict might thereby be influenced. In addition the owner's counsel insists that they anticipated the introduction in evidence of the ordinances of the city referring to these revenue bonds, as had occurred in other cases. The counsel for the owner could have determined the issue of ownership of the bonds by more simple and direct means, without the use of a question calculated to raise this remote and improper issue. Mere determination of whether or not a juror owned such bonds would suffice to inform counsel if the matter need be pursued to exercise the right of peremptory challenge. The ordinances were not introduced. This question on *voir dire* was improper and requires reversal of this cause.

The city also asserts that counsel for the owner rendered a fair determination of just compensation impossible by his argument to the jury, in the absence of any objections thereto. The owner's counsel stated to the jury that while the jury could not give the owner compensation for moving, for its inconvenience, or for its goodwill in that location, the jury could in considering the compensation to be allowed, give the owner just compensation that would

render it neither richer nor poorer, and that the jury would be so instructed by the court.

The owner in defense of this issue says that the city failed to object to the argument, and cannot now claim error. We have held, however, that if prejudicial arguments are made without objection of counsel or interference of the trial court to the extent that the parties litigant cannot receive a fair trial and the judicial process cannot stand without deterioration, then upon review this court may consider assignments of error although no objection was made and no ruling was made or preserved thereon. *City of Chicago in Trust for Schools* v. *Pridmore,* 12 Ill.2d 447.

In his argument counsel for the owner stated that his client could not recover in this cause for certain expense and loss which it would sustain as a consequence of moving from the property taken, but he then dwelt at length upon the duty and right of the jury, in their consideration of the damage to be allowed the owner, to see that the owner is no poorer after the taking of its property than it was before. Thus while technically negating the right to recover for certain expense and loss, counsel invited the jury to so provide in its verdict for damages that the owner would suffer no expense or loss. The emphasis upon this position could serve only to deprive the city of a fair trial and to deteriorate the judicial processes.

The error of the court in receiving evidence and giving instructions in relation to damages to the property not taken, when the owner had failed to prove the properties contiguous; the court's error in denying the city's post-trial motion to vacate that part of the judgment for damages to the property not taken; the error in permitting improper issues to be advanced in the *voir dire* examinations; and the highly improper argument of counsel for the owner, constitute reversible error and the cause must be remanded for a new trial. Other issues have been raised by the city,

but having found that the judgment must be reversed for these reasons it is unnecessary to pursue other assignments.

The judgment is reversed and the cause remanded for a new trial in accordance with the tenor of this opinion.

*Reversed and remanded.*