LAKE COUNTY PUBLIC BUILDING COMMISSION, Plaintiff-Appellant, v. La SALLE NATIONAL BANK, as Trustee, *et al.*, Defendants and Cross–Petitioners-Appellees (Robert Douglass Development Company *et al.*, Defendants-Appellees).

Second District No. 2—87—1081

Opinion filed November 16, 1988.

Donald T. Morrison & Associates, P.C., of Waukegan (Donald T. Morrison, of counsel), for appellant.

John Chen and Seymour Simon, both of Rudnick & Wolfe, of Chicago (Thomas F. Geselbracht, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, the Lake County Public Building Commission, filed a condemnation petition in the circuit court of Lake County seeking to condemn a parcel of land held in trust by defendant, La Salle National Bank. The bank and the managing partner of the limited partnership owning the beneficial interest in the parcel (hereinafter defendants) filed a cross-petition seeking damages to the remainder of the property not sought in the condemnation proceeding. Following a jury trial, defendants were awarded $340,000 just compensation for the parcel condemned and $400,000 for damages to the remainder of the property. Plaintiff then filed this appeal.

The issues raised on appeal are: (1) whether the taken parcel and the remainder parcel were contiguous; (2) whether defendants' witness properly considered rental income in his valuation of the remainder parcel; (3) whether it was error for defendants' witness to testify to a portion of the contents of a mortgage on the remainder parcel

that was held to be otherwise inadmissible; (4) whether it was error for defendants' witness to testify to possible future expansion of the remainder parcel as a basis for his valuation; and (5) whether it was error to give Illinois Pattern Jury Instructions, Civil, No. 300.44 (2d ed. 1971) (hereinafter IPI Civil 2d) when there was a question as to whether the remainder parcel was damaged.

The property in issue consists of two parcels of land. The parcel actually condemned is approximately 83,000 square feet, most of which is a parking lot with the balance being a ravine which is unusable for parking. The remainder parcel not taken is located diagonally to the condemned parcel and is separated by the intersection of Water Street and Utica Street. The remainder is improved with an approximately 85,000-square-foot office building and parking lot. Both parcels are owned in fee simple by La Salle National Bank under a land trust. The sole beneficial owner under the trust is Factory Outlet Mall Associates, an Illinois limited partnership, of which Robert G. Douglass, Jr., is the managing general partner.

Plaintiff, on October 20, 1986, filed a petition for condemnation in which it sought, pursuant to section 14(b) of the Public Building Commission Act (Ill. Rev. Stat. 1985, ch. 85, par. 1044(b)), to acquire the above-described condemned parcel by eminent domain as part of the Lake County jail facility. On December 29, 1986, defendants filed a cross-petition seeking damages to the remaining parcel of land allegedly arising out of the condemnation of the taken parcel.

At trial, defendants proceeded first. Defendants' first witness, Robert Douglass, testified to the development of the property as well as the various leases in effect and that those leases required 113 parking spaces. The limited partnership purchased the two parcels from Sears in 1984. Prior to the sale, Sears had operated a three-level retail store in the building on the remainder parcel and an auxiliary parking lot for the retail store on the taken parcel. According to Douglass, the partnership originally planned to utilize the building as a factory outlet mall, but they later decided to convert the building to a mixed use facility and lease office and retail space. There are currently 19 leases to tenants consisting of a restaurant, numerous law firms, several retail stores, and various other businesses. The total available square footage is between 60,000 and 68,000, of which 52,000 square feet is presently leased. The taken parcel is used as an auxiliary parking lot which is otherwise undeveloped.

Allen L. Kracower, a land planner, testified that there were 197 parking spaces available on the taken parcel and 154 parking spaces on the remainder parcel. He also estimated that 284 parking spaces

would be needed for the office complex under existing zoning ordinances if it were fully leased. Kracower also stated that the highest and best use of both parcels viewed as a whole would be office and parking.

Gerald E. Lindgren, a traffic engineer, testified for defendants that the taking of the auxiliary lot would have a detrimental impact on the remainder because there would be insufficient parking on the remainder to meet the needs of the office building. Additionally, Lindgren stated that, in his opinion, building a county jail complex across the street would also detrimentally impact on the parking situation on the remainder parcel. He also testified that there is an American Legion parking lot across the street which currently allows free parking during the day, that there is a public parking lot located just north of the remainder parcel, and that there is free on-street parking on several streets adjacent to the remainder parcel.

Defendants also presented William A. McCann, a real estate appraiser, as a valuation witness. McCann testified to the value of the taken parcel, the two properties as a whole, and the value of the remainder parcel before and after the taking. McCann opined that the proper compensation for the taking, including damage to the remainder, is $1,150,000. In arriving at his valuation, he considered both the present and future impact on the remainder resulting from the condemnation of the parking lot.

Plaintiff's first witness, Robert B. Hamilton, a civil and traffic engineer, stated that he did a theoretical restriping of the parking areas on the remainder parcel. Under one method he determined the available parking spaces to be 197, and under an alternative method he calculated the available spaces at 207. He then opined that the maximum number of parking spaces needed to accommodate the office complex at full capacity would be 162.

Kernel Parich, Waukegan's zoning administrator, testified that the zoning ordinances in Waukegan require a certain amount of available off-street parking for an office building, but there is a provision that allows for a reduction in the parking requirements in downtown Waukegan. He further stated that between 1977 and 1981 there were no variation requests under the ordinances which were denied, but he was unsure for the period between 1981 and the time of trial.

Two additional witnesses testified on behalf of plaintiff as to the highest and best use of the taken parcel as well as its fair market value. Clifford A. Zoll, a real estate appraiser, testified that the highest and best use of the taken parcel is any use allowed by the current zoning and estimated its fair market value to be $250,000. Neil King,

a real estate broker and appraiser, stated the highest and best use of the taken parcel is for office development and estimated its fair market value to be $280,000.

King also opined that the remainder would not suffer any damage as a result of the taking. Additionally, he testified that the remainder would have insufficient parking to meet the Waukegan zoning requirements, but that the ordinance provides for variances and for a 50% reduction in its parking requirements.

The jury determined the just compensation for the taken parcel to be $340,000 and assessed the damage to the remainder to be $400,000.

Plaintiff contends that the trial court erred in allowing the jury to consider damages to the remainder because the parcel taken was not contiguous to the remainder. Plaintiff further argues that it was error for the trial court to deny the motion to strike defendants' cross-petition without first holding an evidentiary hearing. Defendants respond that the two parcels are contiguous because they are inseparably connected in use. Defendants also maintain that plaintiff waived the issue of whether an evidentiary hearing was required because they never requested a hearing or objected at trial to the court's failure to hold an evidentiary hearing. Alternatively, defendants argue that it was harmless error not to have held an evidentiary hearing because the trial court heard all of the evidence on this issue before submitting it to the jury. Finally, defendants contend that the evidence supported the trial court's decision to submit the question of damages to the remainder to the jury.

■ We address initially plaintiff's contention that a separate evidentiary hearing should have been held on the motion to strike defendants' cross-petition. Plaintiff relies on *City of Quincy v. V.E. Best Plumbing & Heating Supply Co.* (1959), 17 Ill. 2d 570, 162 N.E.2d 373, in arguing that the trial court erred here in not conducting a separate evidentiary hearing on defendants' cross-petition. Plaintiff, however, never requested a separate evidentiary hearing and has waived this contention. In any event, *V.E. Best* does not, however, stand for the proposition suggested by plaintiff. It holds only that if the owner fails to sustain the burden of proving the two properties to be contiguous, the court should not then permit the jury to consider evidence as to damage to the remainder. (*V.E. Best*, 17 Ill. 2d at 574, 162 N.E.2d at 376.) In the instant case, the trial court did hear evidence on the propriety of the cross-petition during trial and ruled that the question of damages to the remainder should be submitted to the jury. There was no need for a separate evidentiary hearing,

under these circumstances. Nevertheless, a cross-petition for damages to the remainder alleged to be contiguous is a question of law, as noted below, and the issue of contiguity should be first determined by the judge either in a separate evidentiary hearing before the court without a jury or by the judge as a question of law during a jury trial before proceeding to the issue of damages to the remainder in the event the evidence does not sustain a finding of contiguity.

■ We turn next to the issue of the contiguity of the two parcels. A property owner must show unity of use, contiguity, and title, between the condemned property and the remainder to maintain a cross-petition for damages to the remainder allegedly caused by the condemnation. (*Illinois Medical Center Comm'n v. United Church of the Medical Center* (1986), 142 Ill. App. 3d 498, 504, 491 N.E.2d 1327.) Whether or not a cross-petition is proper is a question of law which must be decided by the court. (*City of Chicago v. Equitable Life Assurance Society* (1956), 8 Ill. 2d 341, 348, 134 N.E.2d 296; *Department of Public Works & Buildings v. Hanna* (1971), 4 Ill. App. 3d 884, 885, 282 N.E.2d 269.) Where the evidence produced on the cross-petition fails to sustain the burden of the owner to show contiguity, the trial court should not thereafter permit the jury to consider damages to the remainder. (See *V.E. Best*, 17 Ill. 2d at 574, 162 N.E.2d at 376.) Plaintiff's only challenge in this case to defendants' cross-petition is that the two parcels lack contiguity. The parcels are not physically joined nor, plaintiff contends, are they inseparably connected in use.

■ Two parcels of property will be considered contiguous for purposes of a cross-petition in a condemnation proceeding if they are either physically joined as a single unit or so inseparably connected in use that the taking of one will necessarily and permanently injure the other. (*V.E. Best*, 17 Ill. 2d at 572-73, 162 N.E.2d at 375-76; *Equitable Life Assurance Society*, 8 Ill. 2d at 346, 134 N.E.2d at 299.) Prior cases addressing the issue of contiguity have only recognized damages to the remainder when the condemnation of the taken parcel effectively damages or destroys the principal use for which the remainder was designed. (See *Department of Public Works & Buildings*, 4 Ill. App. 3d at 886, 228 N.E.2d at 271.) The mere convenience or economic benefit of operating nearby properties in conjunction with one another, which is lost due to the condemnation of one of the parcels of property, is insufficient to support a claim for damages to the parcel not taken. (*Department of Public Works & Buildings*, 4 Ill. App. 3d at 886, 228 N.E.2d at 271.) In deciding whether two parcels are contiguous, the court must consider the properties as they existed at the

time the condemnation proceeding is commenced. *Department of Transportation v. Shaw* (1977), 68 Ill. 2d 342, 348, 369 N.E.2d 884; *Equitable Life Assurance Society*, 8 Ill. 2d at 348, 134 N.E.2d at 300.

■ In the present case, defendants maintain that the two parcels are contiguous because, without the auxiliary parking on the taken parcel, the remainder will be necessarily and permanently injured in that it will have insufficient parking to meet the current zoning requirements and will have less parking than what would be needed to meet tenant demand. The evidence in this case, however, does not support defendants' contention that the condemnation of the auxiliary parking lot will necessarily and permanently injure the remaining parcel upon which the office complex is located.

Although defendants' witness, Allen Kracower, testified that under Waukegan's zoning ordinances the current use of the office building and development of the remaining space for office purposes requires 284 parking spaces, plaintiff's witness, Waukegan zoning administrator, Kernel Parich, testified that the zoning ordinances provide for parking requirement waivers or variance requests and that no such requests were denied between 1977 and 1981. Furthermore, plaintiff's witness, Robert Hamilton, testified that he utilized two alternative approaches to restriping the parking area on the remainder parcel. Under the first alternative, he rearranged the parking spaces on certain areas of the lot and, utilizing 9-foot-wide spaces, calculated the available spaces to be 197. His second alternative used the same layout of spaces as alternative one, but, by using 8½-foot-wide spaces, he estimated the number of available spaces to be 207. He further testified that an 8½-foot-wide parking space is standard in most office building lots, that most communities in the area only require 8½-foot-wide spaces because of the reduction in size of American automobiles, and that Waukegan presently allows 8½-foot-wide spaces in its central business district although the zoning ordinance provides for 9-foot-wide spaces.

This testimony does not demonstrate that the remainder will be necessarily and permanently injured by the taking. As a practical matter, the area available for parking on the remainder can be increased by simply restriping the current space to provide smaller parking stalls. Additionally, there is a likelihood that a variance or waiver of the zoning requirements can be obtained. More importantly, defendants failed to show that a waiver or variance could not be obtained or was not available such that they would be necessarily and permanently in violation of the zoning ordinance after the taking.

Kracower also testified that based upon the office building's cur-

rent use the parking needs are between 200 and 240 spaces. Robert Hamilton testified, however, that the maximum number of parking spaces needed to accommodate the office complex at full capacity would be only 162. As noted earlier, even though the parking areas are currently striped for 154 spaces, the lots could be restriped to provide 197 to 207 spaces. Additionally, there is available public parking in the surrounding area, albeit somewhat limited. Even accepting Kracower's estimate of the parking needs of the building at full capacity, we cannot conclude that there will be less parking available on the remaining parcel and in the surrounding area than what is required if the building were at full capacity, which it is not nor has it been in the past. Defendants' evidence of the parking needs for the office building fails to establish that the remainder would be necessarily and permanently injured by elimination of the auxiliary parking lot.

Two of defendants' witnesses did testify that available public parking is limited in the area surrounding the remainder parcel. This testimony is not particularly persuasive, however. Even though public parking is limited, it remains available as an alternative to relieve the parking needs for the office building. As noted earlier, defendants' witness, Lindgren, testified that there is an American Legion parking lot across the street which currently allows free parking during the day, that there is a public parking lot located just north of the remainder parcel, and that there is free on-street parking on several streets adjacent to the remainder parcel. See *Equitable Life Assurance Society*, 8 Ill. 2d at 347-48, 134 N.E.2d at 300.

The condemnation of the auxiliary parking lot in this case will cause defendants some inconvenience and deprive them of its beneficial use. Although such considerations may be relevant in determining the value to be attributed to the taken property, they do not represent a necessary and permanent injury to the remainder. The two properties are convenient and beneficial to one another, but they cannot under the proofs here be considered as a single property. (See *V.E. Best*, 17 Ill. 2d at 574, 162 N.E.2d at 376.) Because defendants failed to sustain the burden of showing that the two parcels were so inseparably connected in use that the condemnation of the parking lot necessarily and permanently injured the property upon which the office building is located, we hold that the trial court erred in submitting the question of damages to the remainder to the jury. Because of our disposition of this issue, we need not address the remaining issues, which concern the valuation of the remainder.

■ Accordingly, we reverse the jury award of $400,000 damage

to the remainder. As the presentation of evidence involving the taken parcel was limited by the trial court to proof of valuation of the taken parcel as a part of the whole, we must also, as requested by defendants, reverse the jury award on the taken parcel and remand for a new trial on just compensation for that parcel only so that evidence of valuation may be submitted on the taken parcel standing alone.

Reversed and remanded.

WOODWARD and NASH, JJ., concur.