John BIANCHI, D.M.D., and wife, Sandy Bianchi; Bianchi Real Estate Limited Partnership; and Lewis Bianchi in his capacity as General Partner, Bianchi Real Estate Limited Partnership, Appellants,

v.

CITY OF HARLAN, a Fourth Class City; and City of Harlan Tourist and Convention Commission, an agency of the City of Harlan, Appellees.

No. 2006–SC–000895–DG.

Supreme Court of Kentucky.

May 22, 2008.

Rehearing Denied Feb. 19, 2009.

Rodney E. Buttermore, Jr., Buttermore & Boggs, Harlan, KY, Counsel for Appellants.

Susan C. Lawson, Lawson & Lawson, PSC, Harlan, KY, Counsel for Appellees.

Opinion of the Court by Justice ABRAMSON.

In this condemnation action, we granted the landowners' petition for discretionary review to consider whether they are entitled to additional compensation under the "unity rule" for alleged damages to property that adjoins or is in close proximity to the property condemned. Agreeing with the Court of Appeals that the unity rule does not apply, we affirm.

### RELEVANT FACTS

In February and March 2001, the City of Harlan, Kentucky, on behalf of its Tourist and Convention Commission (the City), brought two petitions in the Harlan Circuit Court to condemn four parcels of downtown Harlan realty for use in conjunction

with a proposed convention center and water park. The parcels form a rectangle of approximately 0.38 acres at the southwest corner of South Main Street and West Clover and were sought by the City as parking space for the convention center to be erected opposite them on the east side of South Main Street. Three of the parcels, the subjects of the March petition, were owned by the Bianchi Real Estate Limited Partnership, a family investment business organized by Lewis Bianchi, the Partnership's general partner, and his children. These paved parcels provided parking for nearby properties owned by the Partnership. The fourth parcel, the subject of the February petition, was owned by one of the Bianchi children, Dr. John Bianchi, and his wife, Sandy Bianchi. This parcel contained a small, single-story building which was leased to a pet shop. The different ownerships gave rise to the separate petitions, but the record indicates that John and Sandy Bianchi held their tract for the convenience of the Partnership and that all four parcels were managed by the Partnership and for its benefit.

In addition to the four condemned tracts, the Partnership owned at the time more than 130 parcels of realty in Harlan and other eastern Kentucky communities. The Partnership derives the bulk of its income, apparently, from leasing its holdings. In Harlan, the Partnership owns both residential and retail space in a building immediately to the west of the condemned property along the south side of West Clover. That building includes Black Motor Apartments operated by the Partnership and Zion's Rentals, a lessee of the Partnership. Just to the west of that building the Partnership owns property which it leases to a Bianchi family-operated funeral home business, Harlan Funeral Home. Immediately north of West Clover Street along the west side of South Main Street, the Partnership owns three additional lots and buildings, which are leased to retail and residential establishments. At the time of these proceedings, the lessees included New Townsite Restaurant, Styles and Stuff Beauty Salon and Shirt Shack. The Partnership used the condemned tracts as parking for its tenants in these various neighboring properties and for the tenants' customers.

Although initially the four condemned tracts were evaluated separately, the defendants successfully moved to consolidate the two condemnation petitions and to have the four tracts reevaluated as a unit. We shall refer to the defendant landowners collectively, therefore, as the Bianchis. The commissioners found that the combined parcel was worth $101,500.00, and on April 22, 2003, the trial court entered an interlocutory judgment upholding the condemnation and awarding the Bianchis that amount. Both parties filed exceptions to the commissioners' valuation. In addition, although initially the Bianchis had not challenged the City's right to condemn the four parcels, on April 11, 2003, they moved to file a belated answer contesting the condemnation as unnecessary to the City's revised plans for its convention center. Then, on May 23, 2003, they moved to file a counterclaim seeking compensation for what they alleged was the "reverse condemnation" of their properties west and north of the condemned area. Although styled "reverse condemnation," the Bianchis' counterclaim did not allege a taking of their remaining property. The Bianchis alleged rather that their compensation should have included the loss of value their other parcels would sustain as a result of the condemnation.

The trial court disallowed the late answer and limited the "lost value" claim to the properties immediately to the west of the condemned tracts, *i.e.* the building

housing Black Motor Apartments and Zion Rentals and the funeral home building with parking lot. The trial court also ordered bifurcated jury trials of the petition and the counterclaim. In accord with the jury's findings in those proceedings, the trial court entered a final judgment of condemnation on March 29, 2005 awarding the Bianchis $120,000.00 for the taking of the four parcels and $43,640.00 for the loss in value of the Bianchis' allegedly affected properties to the west of the condemned property.

Both parties appealed. By Opinion rendered November 3, 2006, the Court of Appeals affirmed the $120,000.00 award for the taking, but because in its view the Bianchis' neighboring property could not be deemed "united" for condemnation purposes with the condemned tracts, it reversed the award for lost value and remanded for dismissal of the Bianchis' counterclaim. We accepted discretionary review to consider the Bianchis' contentions that they should have been allowed to file a late answer challenging the condemnation and that they should have been compensated for the adverse effect of the condemnation on all of their neighboring properties under the unity rule. We agree with the Court of Appeals that the late answer was properly disallowed, and though our reasoning differs somewhat from that of the Court of Appeals, we also agree that the unity rule does not apply so as to require valuing the condemned parcels in conjunction with the Bianchis' other holdings in downtown Harlan.

## *ANALYSIS*

### I. The Bianchis Were Not Entitled to File a Belated Answer.

■ Turning first to the Bianchis' motion to file a belated answer, we note that

summonses in the initially separate condemnation actions were served on the Bianchis on March 23 and March 30, 2001. Under KRS 416.600, the Bianchis then had twenty days from the date of service to answer the petitions and to challenge the City's right to condemn. At first the Bianchis did not question that right, and they concede that their April 11, 2003 motion to file a belated answer came long after (indeed two years after) the statutory deadline. They observe, however, that CR 6.02 authorizes the trial court to accept an untimely answer "where the failure to act was the result of excusable neglect," and they contend that the trial court abused its discretion when it refused to exercise that authority here. According to the Bianchis, the City's original plans envisioned a convention center with a capacity in excess of 2,400 persons and a corresponding need for parking. They allege that sometime before April 2003, however, they learned from an unnamed source that the plans had been reduced to a facility with a capacity of only about 700.[1] They maintain that they should then have been allowed to argue that the condemnation of their property was not necessary to the smaller City project.

■ While the right to condemn is limited to property which is reasonably necessary for a valid public purpose, *McGee v. City of Williamstown*, 308 S.W.2d 795 (Ky. 1957); *City of Bowling Green v. Cooksey*, 858 S.W.2d 190 (Ky.App.1992), the determination of that necessity is left in the first instance to the legislative body, and courts will not interfere with its discretion unless "the taking bears an unreasonable relation to the public interest or welfare."

---

1. The City challenges this allegation, noting there is no evidence of record to support the Bianchis' position.

*McGee v. City of Williamstown,* 308 S.W.2d at 797. Here, there might have been some merit to the Bianchis' motion had an alteration in the City's plans eliminated the need for parking altogether. For the City to continue with the condemnation for parking purposes under those circumstances might have appeared so unreasonable as to justify reopening the question regarding the right to condemnation. But that is not what the Bianchis allege. They do not dispute that the convention center is a valid public project and that even the smaller project requires space for parking. They contend only that their particular lots might have been spared under the revised plan. How best to provide for the project's reasonable parking needs, however, including reasonable potential future needs, is precisely the sort of policy decision with which courts are ill-equipped to interfere. We agree with the Court of Appeals, therefore, that the trial court did not abuse its discretion when it disallowed the Bianchis' belated challenge to the City's right to condemn.

## II. Condemnation of the Bianchis' Parking Parcels was not a Partial Taking Under the Unity Rule.

The real thrust of the Bianchis' contentions is that they were not compensated adequately for the four lots that were taken and that the courts below erred by not requiring those lots to be valued as a portion of the Bianchis' entire holdings along South Main Street and West Clover Street. We disagree.

Sections 13 and 242 of the Kentucky Constitution permit the public condemnation of private property, but only for a valid "public use," and only upon prior payment of "just compensation." Just compensation, under Kentucky law, "is the difference in market value of the tract before and after the taking." *Common-*

*wealth, Department of Highways v. Sherrod,* 367 S.W.2d 844, 857 (Ky.1963). Where the public authority condemns an entire tract, this measure translates simply as the market value of the tract immediately before the condemnation because, obviously, the landowner retains no part of it after the condemnation. Where only a portion of the tract is condemned, the measure is the market value of the entire tract immediately before the condemnation less the market value of the remainder retained by the landowner immediately after the condemnation. We reasserted this standard in *Sherrod, supra,* and in 1976, the General Assembly incorporated it in the Eminent Domain Act (KRS 416.540 to 416.670), which provides in pertinent part that condemnee landowners are to be compensated

> such a sum as will fairly represent the difference between the fair market value of the entire tract, all or a portion of which is sought to be condemned, immediately before the taking and the fair market value of the remainder thereof immediately after the taking.

KRS 416.660. *See also* KRS 416.580 (same). In *Sherrod,* moreover, we expressly disavowed an alternative method of valuing partial takings whereby "taking damages"—the value of the part taken—were assessed apart from and then added to "resulting damages"—the value of the "harm" to the remainder. The Bianchis' "lost value" claim and the trial court's bifurcated procedure in this case amounted to a revival of this disallowed "taking damages-resulting damages" approach, and for that reason the additional award to the Bianchis for alleged damages to their nearby property must be reversed even if it were otherwise proper.

The Court of Appeals concluded, of course, that it was not otherwise proper because in its view this case does not

involve a partial taking. According to the Court of Appeals, the different retail, residential and parking uses to which the Bianchis' various parcels were put could not be deemed a unified use, and therefore the tracts taken from the Bianchis were not part of a larger whole, but instead constituted separate parcels properly valued in isolation from the Bianchis' neighboring parcels. The Bianchis maintain, on the other hand, that the different uses their tenants have made of the parcels are immaterial and that what matters is the use that they as landlords make, which, they maintain, is the unified use of leasing for investment purposes, much like a shopping center owner who leases space to several different retailers. Accordingly, the Bianchis contend that just compensation in this case is the difference between the value of their entire downtown Harlan holdings prior to the condemnation and the value of those holdings with the condemned parcels removed. Although we agree with the Bianchis that it is the owner's, not the tenant's, use of the property that is pertinent, we nevertheless agree with the Court of Appeals' conclusion that the Bianchis' use here is not "unified" for condemnation purposes.

■ As the parties note, two parcels may be unified for valuation purposes if the proponent can show that "they are contiguous and are united in use and ownership." *Commonwealth, Department of Highways v. Dennis,* 409 S.W.2d 292, 293 (Ky.1966). In *Jones v. Commonwealth, Department of Highways,* 413 S.W.2d 65 (Ky.1967), we summarized this "unity rule" as follows:

> Even if the owner's land is divided into parts in such manner as might otherwise raise the issue of separateness, if he is devoting the parts to a single use, and they lie in such proximity as to be in effect united by that use into a single

property, they will be regarded as a whole for the purpose of assessing damages for the taking of a part.

*Id.* at 67 (citation and internal quotation marks omitted).

■ This Court has not addressed, post-*Sherrod,* the application of the unity rule in circumstances such as these where the condemned property provides parking for nearby businesses occupying other parcels owned by the same landowner. But *see Commonwealth, Department of Highways v. Blanton,* 352 S.W.2d 545 (Ky.1961) (disapproving the resulting damages approach later disallowed in Sherrod). Other jurisdictions, however, have confronted these circumstances. Under the unity rule, as the Bianchis observe, parking lots have sometimes been deemed united in use with the parcels they serve. *West Virginia Department of Highways v. Bartlett,* 156 W.Va. 431, 194 S.E.2d 383 (1973); *City of Los Angeles v. Wolfe,* 6 Cal.3d 326, 99 Cal.Rptr. 21, 491 P.2d 813 (1971). Other cases, however, have found condemned parking lots to be separate from the served parcel, e.g. *City of New York v. Allied Stores of New York, Inc.,* 44 N.Y.2d 965, 408 N.Y.S.2d 327, 380 N.E.2d 158 (1978), and have noted that

> [t]he mere convenience or economic benefit of operating nearby properties in conjunction with one another, which is lost due to the condemnation of one of the parcels of property, is insufficient to support a claim for damages to the parcel not taken.

*Lake County Public Building Commission v. LaSalle National Bank,* 176 Ill.App.3d 237, 125 Ill.Dec. 931, 531 N.E.2d 110, 114 (1988) (citing *City of Chicago v. Equitable Life Assurance Society,* 8 Ill.2d 341, 134 N.E.2d 296 (1956)). *See also Commonwealth, Department of Highways v. R.J. Corman Railroad Company,* 116 S.W.3d 488 (2003) (noting that inconvenience and

business losses are not compensable in condemnation). Generally, it must appear that the taking will necessarily and permanently damage the remainder, *City of Chicago v. Equitable Life Assurance Society, supra,* or, stated differently, that the parcel taken is substantially necessary to the reasonable use of the remainder. That latter standard was applied in *City of Los Angeles v. Wolfe, supra,* the case upon which the Bianchis principally rely, where the severing of an office building's parking lot threatened to render the building permanently out of compliance with zoning requirements regarding parking capacity and to freeze the building at its current size, a substantial and permanent injury to the property itself, not simply to the business conducted thereon.

■ In this case, on the other hand, the Bianchis allege neither a necessary and permanent injury to their remaining property as such nor a substantial interference with the continued use of it. Indeed, the City did not erect a structure on the condemned property but instead created a public parking lot. Inasmuch as public lot and on-street parking remain available to the Bianchis' tenants, tenants' customers and residential lessees and given the possibilities of the Bianchis acquiring additional property for, or of converting some of their remaining property to, parking there is no permanent injury or substantial interference with their nearby property. The Bianchis essentially allege that the taking of their parking renders their remaining parcels less convenient and therefore less attractive to tenants, and thus that it could affect the profitability of their leases. The usefulness of the taken parcels, however, is a factor adequately reflected in their market value apart from the remaining parcels, as determined by the jury. Moreover, as we have many times observed, "injury to business or loss of profits is not a proper element of com-

pensation for land taken in condemnation proceedings." *City of Newport Municipal Housing Commission v. Turner Advertising, Inc.,* 334 S.W.2d 767, 770 (Ky.1960). *Commonwealth, Department of Highways v. R.J. Corman Railroad Company, supra* (same). We conclude, therefore, that for condemnation purposes the parcels taken were not united in use with the rest of the Bianchis' property, and thus the unity rule does not apply. Given this conclusion, we need not consider whether the various parcels could be deemed contiguous and united in ownership. Because the unity rule does not apply, moreover, the jury's determination of the taken parcels' market value in isolation from the rest of the Bianchis' property was the proper measure of the compensation due.

## CONCLUSION

In sum, we agree with the Court of Appeals that where parking space remained a reasonable necessity for the convention center project, the scaling back of the City's plans did not entitle the Bianchis to challenge the condemnation two years after the petitions were filed. We also conclude that potential inconvenience and business losses flowing from the condemnation are not the type of permanent injury or substantial interference with property use necessary to invoke the unity rule. Thus we agree with the Court of Appeals' conclusion that the Bianchis were not entitled, under that rule, to have their condemned property valued in conjunction with their other Harlan holdings. Accordingly, we affirm the Court of Appeals' November 3, 2006 Opinion upholding the award of $120,000.00 to the Bianchis, reversing the award of additional damages, and remanding for dismissal of the Bianchis' counterclaim.

All sitting. LAMBERT, C.J., CUNNINGHAM, MINTON, NOBLE, and SCHRODER, J.J., concur.

SCOTT, J., dissents as he views the "Unity Rule" applicable to the extent applied to the properties by the trial court on the Appellant's counterclaim. Thus, he would reverse the Court of Appeals decision and reinstate the full judgment of the trial court.