RENDERED: MAY 23, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0802-ME

K.N.                                                              APPELLANT

APPEAL FROM BOYD CIRCUIT COURT
v.                HONORABLE GEORGE DAVIS, JUDGE
ACTION NO. 20-AD-00006

M.D.; L.W., A MINOR CHILD; R.W.;
AND S.D.                                                         APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, L. JONES, AND McNEILL, JUDGES.

JONES, L., JUDGE: Appellant, K.N. ("Father"), appeals from the Findings of

Fact and Conclusions of Law and Judgment of the Boyd Circuit Court entered on

June 7, 2024, which granted the adoption of L.W. ("Child"), to Appellees, M.D.

and S.D. ("Adoptive Parents"), and terminated the parental rights of Father and

Appellee, R.W. ("Mother").[1]

---

[1] Mother has not appealed this decision or been involved in any of the proceedings before this Court.

Father previously appealed from the underlying case; in that matter this Court remanded for a new hearing because the circuit court failed to explicitly utilize the clear and convincing evidence standard in making its original findings of fact and conclusions of law. *K.N. v. S.D.*, No. 2023-CA-0571-ME, 2023 WL 8494811 (Ky. App. Dec. 8, 2023). Most of the facts remain the same since the original hearing in the underlying case, so we shall adopt the following background as outlined in the Court's previous Opinion:

> Child was born in April 2018, in West Virginia. Mother and Father were not married at the time Child was born. Mother and Father have both been incarcerated on drug-related charges for most of Child's life. Father currently resides in Ohio and Mother is incarcerated in West Virginia. As a result, Child was placed into the physical custody of S.D. and M.D. ("Adoptive Parents") in June 2018, just months after his birth, upon [a dependency, neglect, and abuse ("DNA")] petition filed by the Cabinet for Health and Family Services ("Cabinet"). In January 2019, the [Boyd District Court] granted permanent relative placement of Child to S.D. [in the DNA case.]
>
> . . .
>
> On June 26, 2020, Father filed an entry of appearance, through counsel. Father then moved to file a late answer, response, counterclaim, and crossclaim . . . . The trial court denied Father's motion to file a late answer on November 6, 2020. Father subsequently filed a second motion to file a late answer, arguing he was never personally served and thus his answer was not late. The trial court denied Father's second motion to file a late answer on January 8, 2021.

On March 30, 2023, the trial court conducted a final hearing in this matter. Testimony was heard from Adoptive Parents and Father. The Adoptive Parents testified that Child had been in their care for almost his whole life; that Father made two attempts to contact Adoptive Parents; and that Adoptive Parents never attempted to take Social Security benefits from Father for Child. Adoptive Parents further testified that they treat Child as their own, and that Child gets along with their biological children.

Father, through counsel, cross-examined Adoptive Parents at the hearing. Father testified that he had been incarcerated for most of Child's life but has since been released on probation. Father testified that he has a daughter he takes care of full time. Father also testified that he suffers from anxiety, depression, and PTSD from being incarcerated. Based on the testimony of Adoptive Parents and Father, the trial court granted Adoptive Parents' adoption petition, effectively terminating the parental rights of Father and Mother.

*K.N.*, 2023 WL 8494811, at *1-2 (footnotes omitted).

Following the Court's instruction, the circuit court conducted another hearing on April 11, 2024. Since the original hearing, Mother had also been released from incarceration, and both parents were still on various probationary terms. Father, Mother, and Adoptive Parents testified at the April 11, 2024, hearing. Additionally, Father's mother ("Paternal Grandmother") testified on Father's behalf. The circuit court issued new Findings and Fact and Conclusions of Law and a Judgment of Adoption on June 7, 2024, which granted the adoption, terminated the parental rights of Mother and Father, and stated that the circuit court

-3-

utilized the clear and convincing standard of proof. (Record, "R." at 151.) The current appeal followed. On appeal, Father argues that the circuit court erred in not allowing him to file an Answer to the Adoptive Parents' petition for adoption and that there was not clear and convincing evidence supporting the circuit court's findings.

## STANDARD OF REVIEW

An adoption which occurs without the consent of a child's biological parents is tantamount to a proceeding for the involuntary termination of parental rights. *See Moore v. Asente*, 110 S.W.3d 336, 351 (Ky. 2003). A judgment which terminates parental rights to a child shall only be reversed by this Court if it is clearly erroneous; in other words, there is no substantial, clear, and convincing evidence to support the lower court's decision. *See B.L. v. J.S.*, 434 S.W.3d 61, 65 (Ky. App. 2014); *see also* CR[2] 52.01.

## ANALYSIS

Firstly, we find that Father's argument concerning the circuit court's decision to not permit him to file an answer is immaterial to the appeal at hand. The circuit court did not enter a default judgment against Father for a failure to file an answer, nor do we see any way in which Father's case was negatively impacted by the circuit court's decision to deny his motion to file a late answer. *Compare,*

---

[2] Kentucky Civil Rules of Procedure.

*e.g.*, *Bianchi v. City of Harlan*, 274 S.W.3d 368, 371 (Ky. 2008) (The trial court's decision to disallow the appellants to file a belated answer in that case necessarily limited the claims which the appellants were allowed to bring to trial.). The circuit court in this case permitted Father to be present at every hearing, to testify extensively, to cross-examine all witnesses, and to present and defend his case fully. Markedly, Father does not provide any explanation as to how he was not able to fully defend his case due to the circuit court's decision.

We now turn to Father's arguments that the circuit court's findings were not supported by substantially clear and convincing evidence. In order for a contested adoption to be granted, and a parent's rights to be terminated as a result, the trial court must find that at least one of the conditions outlined in KRS[3] 199.502(1) has been established. *A.K.H. v. J.D.C.*, 619 S.W.3d 425, 431 (Ky. App. 2021) (footnote omitted). In the case below, the family court found the conditions of KRS 199.502(1)(a), (e), and (g) to exist,[4] though it needed to only have found one existed. *See C.J. v. M.S.*, 572 S.W.3d 492, 496 (Ky. App. 2019).

---

[3] Kentucky Revised Statutes.

[4] In relevant part, KRS 199.502(1) provides:

> Notwithstanding the provisions of KRS 199.500(1), an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that any of the following conditions exist with respect to the child:

Regarding KRS 199.502(1)(a), "abandonment is demonstrated by facts or circumstances that evince a settled purpose to forego all parental duties and relinquish all parental claims to the child." *O.S. v. C.F.*, 655 S.W.2d 32, 34 (Ky. App. 1983). On appeal, Father argues that he did not abandon Child because he was incarcerated at the time Child was born; Adoptive Parents intentionally kept Child away from him; Father took legal steps to try and have contact with Child; Father was not involved in the DNA case and so the finding of abandonment made against him in that case should not be binding; and that he was always willing to provide financial support when he was able to do so. We take these arguments *in seriatim.*

---

(a) That the parent has abandoned the child for a period of not less than ninety (90) days;

. . .

(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;

. . .

(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]

Father is correct in that incarceration alone is not sufficient to warrant a finding of abandonment. *J.H. v. Cabinet for Hum. Res.*, 704 S.W.2d 661, 663 (Ky. App. 1985). However, this was not the only factor the circuit court relied on in making its finding. It additionally found that Father has never met Child, and so has no relationship with him whatsoever; that Father was still on probationary terms from previous drug related offenses and that he had a history of violating probationary terms; that Father has never provided care or support to Child; and that both parents were previously found to have abandoned Child in the DNA case.

Father admitted that he has never seen Child nor has he established a relationship with Child, but he contends this is because of his incarceration and Adoptive Parents' actions in prohibiting contact. This Court has previously held that it is improper for a court to find abandonment to have existed when a custodial parent consistently prevents a biological parent from having contact with a child. *P.C.C. v. C.M.C.*, 297 S.W.3d 590, 592 (Ky. App. 2009). However, this Court has gone on to distinguish *P.C.C.* from other cases in which such actions on the part of a custodian do not amount to "deliberate and systematic ploys" to keep the non-custodian and the child apart. *See R.P., Jr. v. T.A.C.*, 469 S.W.3d 425, 428 (Ky. App. 2015).

In the case at hand, Father's endeavors to establish contact with Child cannot be said to be consistent. During the April 11, 2024 hearing, when first

asked how many times he attempted to reach out to Adoptive Parents, Father said he had hundreds of times; however, after appearing confused about the question, he changed his answer to five or six times via messaging on Facebook (Video Record, "V.R." April 11, 2024, Hearing – 01:14:30). Father further testified that S.D. blocked him on Facebook sometime after he sent the messages to her, but provided no further information about the contents of the messages or when precisely they were sent.

Besides those messages, Father also states he sought court intervention to establish contact with Child. However, his involvement in the case he references is *de minimis*. In March 2019, two months after permanent custody had been granted to S.D. in the DNA case, Paternal Grandmother filed a petition and motion for custody of Child in a civil custody case in which Father was named as a party. As a part of the proceedings in the civil custody case, Father underwent paternity testing, which established that he was Child's biological father; however, no evidence was presented that indicated Father was involved to any further extent. While Father was incarcerated at the time Paternal Grandmother filed her petition and obviously could not have assumed physical custody of Child immediately, nothing would have prevented him from filing his own motions concerning custody, visitation, or even financial support in anticipation for his eventual release from incarceration. Additionally, it appears Paternal Grandmother did not take any

actions in the civil custody case since the circuit court denied her motion for custody. No one appealed that decision, and Father did not file anything in that case after his release from incarceration. Making way into our next point, Father also did not take any actions in the DNA case.

Father purports that he was never included in the DNA case or considered a party. This is not correct. From the portion of the DNA record introduced as an exhibit below, it is clear that Father's counsel entered his appearance in that matter, Father was considered a party at the time of the dispositional hearing, and, while Father was not present at the dispositional hearing, as he was incarcerated in Ohio at the time, his counsel was present on his behalf. (R. at Petitioner's Exhibit 1, April 11, 2024, Hearing.) Had Father wanted to contest the order awarding permanent custody to S.D. or the dispositional order finding that he had abandoned Child, he could have appealed them; and yet, he did not.[5] *See J.E. v. Cabinet for Health & Fam. Servs.*, 553 S.W.3d 850, 852 (Ky. App. 2018). Regardless, the finding of abandonment in the underlying case and the finding of abandonment from the DNA case are two separate findings and the latter was not necessarily binding as to the former as Father suggests. The circuit court merely noted that, "[a]s found by the District Court, this Court *also* finds that

---

[5] And if Father was not considered a party as he so maintains, there is no indication that he attempted to intervene in the DNA case to challenge any of the orders entered against him.

[Mother and Father] have abandoned [Child] for a period of not less than ninety (90) days[.]" (R. at 154) (emphasis added). At most, the district court's finding was a factor to be considered by the circuit court when it was weighing the evidence before it, which is within its exclusive province to do. *See R.P., Jr.*, 469 S.W.3d at 428.

Father's remaining argument concerning abandonment is that his nonpayment of support should not be held against him, as he could have paid some if Adoptive Parents requested it. Father testified that he was never ordered to pay child support, but he does receive some Social Security Disability payments to which Child might be entitled. In support of why Child was not receiving these payments, Father states Adoptive Parents did not pursue them and argues by "counsel's inference that they did not do so[,] so they could argue that he had not financially supported the child." However, Father did not testify to any actions he took, if any, to facilitate Child receiving some of his Social Security Disability payments other than stating Adoptive Parents did not follow up on it. Regardless of whatever inaction the Adoptive Parents may or may not have taken, the fact remains that Father did not provide any support to Child or make any attempts to do so. It is not the responsibility of a child's custodian to pursue support from a non-custodian, it is the responsibility for the non-custodian to provide support.

Under the circumstances, Father's aspirations to establish contact with Child cannot be said to be consistent, nor do Adoptive Parents' actions rise to the level which can be described as deliberate and systematic ploys to prevent Father from having contact with Child. *See R.P., Jr.*, 469 S.W.3d at 428. Furthermore, his actions "evince a settled purpose to forego all parental duties and relinquish all parental claims to the child." *O.S.*, 655 S.W.2d at 34. The circuit court appropriately weighed all of the evidence before it and found, explicitly by clear and convincing evidence, that Father had abandoned Child for a period of not less than ninety (90) days as well as the other considerations necessary for the adoption to be granted.[6] While Father is no longer incarcerated and appears to have made progress in achieving and maintaining sobriety, the facts presented against Father, and in favor of the adoption of Child by the family he has known and who has cared for him essentially since birth, are simply too overwhelming for this Court to find any clear error in the circuit court's decision.

---

[6] Specifically, the jurisdictional requirements for the adoption had been met, the Adoptive parents were of good moral character and reputable standing in the community and could properly provide care and support to Child, and the adoption would be in Child's best interest. *A.K.H.*, 619 S.W.3d 431.

<u>CONCLUSION</u>

Accordingly, we affirm the Boyd Circuit Court's Findings of Fact and Conclusions of Law and Judgment of Adoption entered in the underlying case on June 7, 2024.

ALL CONCUR.

BRIEF FOR APPELLANT:

Charles L. Douglas, Jr.
Russell, Kentucky

BRIEF FOR APPELLEES M.D. AND S.D.:

Thomas W. Lavender
Ashland, Kentucky