**USHER AND GARDNER, INC., Appellant,**

**v.**

**MAYFIELD INDEPENDENT BOARD OF EDUCATION, Appellee.**

Court of Appeals of Kentucky.

Nov. 13, 1970.

As Modified Jan. 29, 1971.

S. Russell Smith, Smith & Smith, Louisville, Malcolm R. Boaz, Boaz & Boaz, Mayfield, for appellant.

Sam Boyd Neely, Mayfield, for appellee.

REED, Judge.

When a school board needs privately owned land for school purposes and is unable to purchase it from the owner on a basis satisfactory to the board, KRS 162.-030 authorizes the acquisition of such land by eminent domain under any of several statutory methods of condemnation proceedings, among which is KRS 416.120. In this case, the condemnor is the Mayfield Independent Board of Education which seeks to acquire by condemnation a 42.3-acre parcel of land that is a part of a total tract of 103 acres owned by Usher and Gardner, Inc., the landowner. The trial judge ruled that the condemnor had the right to condemn the property sought to be acquired; a jury found that $170,000 was just compensation to the landowner for the land sought to be condemned.

The landowner appeals from each of the determinations made. First, the landowner insists that the condemnor did not satisfy legal prerequisites to the exercise of its power of eminent domain. Second, the landowner asserts that prejudicial errors occurring during the jury trial deprived it of a fair trial on the issue of the amount to be

allowed as just compensation for the land sought to be taken. We hold that the condemnor has the right to exercise its power of eminent domain to acquire this land under the method provided by KRS 416.120. We also find that the trial court erred in determining the time of taking of the land for valuation purposes, and also erroneously excluded evidence of comparable sales offered as evidence by the landowner; neither of these errors can be characterized as harmless.

The landowner argues that KRS 162.030 requires that the acquisition by the condemnor must be for school purposes; this, of course, is quite correct. The landowner further asserts, however, that since KRS 162.060 requires detailed plans and specifications approved by the state Superintendent of Public Instruction as a condition precedent to a contract for construction of a new school building, and since the condemnor admits that it has neither employed an architect nor submitted plans or specifications to the state official concerned for the new school building sought to be located on the land in question, then the condemnor has not satisfied a pre-requisite to the exercise of its power of eminent domain; that argument is quite incorrect.

■ The evidence clearly establishes that the Superintendent of Public Instruction and all other officials of the state Department of Education concerned in the matter fully approved the acquisition of this site for the location of a new high school in the City of Mayfield. KRS 162.060 assures state control of the erection of new school buildings or additions to or alterations of existing school buildings. The regulations of the state Board of Education are primarily directed to the internal operations of the various local school systems of the state. KRS 162.030 requires only that the purpose of acquisition of land be for school purposes. The approval of the proposed site by the Superintendent of Public Instruction and the state Department of Education was clearly proved and was ample evidence to support the finding of the trial judge that the proposed acquisition was for school purposes.

The other objection of the landowner to exercise of eminent domain in this instance is that the condemnor did not negotiate about a private sale contract before institution of the condemnation action. KRS 162.030 authorizes the institution of the action when the board is "unable to make a contract satisfactory to it." Although the language of the statute does not require negotiation, the landowner's objection is actually founded on the failure of the board to enter into a bargaining or "horse trading" type of process. It is conceded that the board offered to purchase the land for $150,000: The landowner refused this offer and made a counter offer to sell for $300,-000. The board then instituted the condemnation action. The landowner says that a take-it-or-leave-it offer is not negotiation, but that is not the question. We said the same thing by way of obiter dictum in Paducah Ice Mfg. Co. v. City of Paducah, 289 Ky. 31, 157 S.W.2d 490 (1942); it was no more the real inquiry in that case than it is in this case. We described the dictum in the Paducah Ice case as an "indication" in Pike County Board of Education v. Ford, Ky., 279 S.W.2d 245 (1955). In the Ford case, the county court commissioners had appraised the land sought to be worth $12,000. A circuit court jury found that it was worth $15,350. The condemnor had offered to purchase the land for $5,000 before it commenced condemnation proceedings. We held that it could not be held as a matter of law that there had been no good faith effort to negotiate because the $5,000 offer had been made subject to further negotiation and was not a take-it-or-leave-it proposition.

The real inquiry in the cases just discussed and in this case is whether the condemnor made a reasonable effort in good faith to acquire the land by private sale at a reasonable price. The statute implicitly requires an effort to effect a contract of purchase satisfactory to the condemnor. A single take-it-or-leave-it offer of a mani-

festly inadequate amount could well evidence a failure to make a reasonable effort to acquire the land by contract of private sale.

◼ In the case before us, it was established that at the time the board contemplated acquisition of the 42.3-acre parcel, the landowner had assessed the total fair market value of the entire 103-acre tract of which the desired parcel was a part at $122,600 for purposes of state, county, and school taxation. The board offered $150,000 for the 42.3-acre parcel. If that offer was manifestly inadequate, then the landowner's assessment was manifestly absurd. Hence, we conclude that the condemnor made all the effort required by KRS 162.030 to acquire the land by contract "satisfactory to it."

◼ Under the method of procedure prescribed in KRS 416.120, the issue of just compensation is determined by a jury trial in circuit court. After the jury returns its verdict, the condemnor has sixty days within which to decide whether to pay the jury's award and take the land or to abandon the condemnation in which event its liability is confined to the payment of costs of the proceeding. The condemnation action in this case was commenced in June, 1968; the trial of the just compensation issue commenced in August of 1969. The landowner was entitled to receive as just compensation the difference in the fair market value of the total tract of land immediately before and immediately after the taking of the 42.3-acre parcel for school purposes. The landowner, however, is not entitled to recover for enhancement in value of the land attributable to the public project. The trial judge declared that June 1968 must be considered the taking date for valuation purposes and restricted the evidence to the difference in fair market value of the land in question to its status immediately before and immediately after that fixed date. The landowner objected; it also offered evidence by proper avowal that there had been an increase in value of the 42.3-acre parcel between June 1968 and August 1969 the time of trial, and that this increased value was not attributable to the possibility of the public project.

In Tharp v. Urban Renewal & Community Development Agency, Ky., 389 S.W. 2d 453 (1965), the public project became generally known in 1961; the actual taking of the land did not occur until 1963. There was evidence that the fair market value of land in the area had increased in the interim. We held that the proper taking date was 1963, but that the jury should be advised by proper instruction that neither enhancement nor depreciation in value attributable to the public project was to be considered in their determination of the "before" valuation. In both Dinwiddie v. Urban Renewal & Community Dev. Agency, Ky., 393 S.W.2d 872 (1965) and Urban Renewal & Com. Develop. Agency v. Fledderman, Ky., 419 S.W.2d 741 (1967), the trial judge fixed the taking date for valuation purposes as the time the public project became generally known even though that date was considerably before the time of the trial of the issue of just compensation. In both instances we held the determination of the taking date was erroneous, but the error was regarded as harmless because admittedly there had been no change in property values in the interim.

Commonwealth, Dept. of Highways v. Gibbs Enterprises, Inc., Ky., 437 S.W.2d 763 (1969) clearly demonstrates that what occurred in the case before us was error. In the Gibbs case, the actual taking date was May 1966. The condemnor attempted to persuade the trial judge to declare the taking date for valuation purposes was June 1963, the date on which the public project first became generally known. The trial judge ruled that May 1966, was the correct taking date for valuation purposes; however, the jury was also instructed to disregard any increase in value attributable to the prospect that the public improvement would be made. On appeal, we held that the trial court's rulings were "eminently correct."

"Requiring valuation witnesses and the jury to fix the value of the property at a time before the actual date of taking, instead of instructing the jury to exclude any fluctuations resulting from foreknowledge of the project, would in most cases be unworkable. For one thing, it would eliminate fluctuations resulting from other legitimate causes. *And certainly it could not be proper if the witnesses dispute the question of whether advance knowledge of the project affected the value of the property.*" Commonwealth, Dept. of Hys. v. Gibbs Enterprises, Inc., Ky., 437 S.W.2d 763 (1969). Witnesses in the instant case testified that the increase in value in the interim period was not attributable to the prospect of the public improvement. The condemnor argues that the enhancement was directly attributable to the public project, and any error in this respect was harmless. To accept the condemnor's answer would require us to determine the probative value of the offered testimony. That determination is for the jury and must not be made by us.

■ We see no escape from the proposition that the taking date (for valuation purposes) of land sought to be acquired in condemnation proceedings is either the date the condemnor takes the land, which it may do under several statutory methods of condemnation prior to a circuit court jury trial of the issue of just compensation, or the date of the trial of the issue of just compensation, whichever occurs first. If evidence is presented concerning fluctuations in the value of the land between the time the public project became generally known and the taking date, then the jury must be instructed in the manner approved in the Tharp case and in the Gibbs case. Therefore, in the instant case the taking date of the land (for valuation purposes) is the date of the retrial.

Both the condemnor and the landowner introduced expert valuation witnesses who undertook to support their opinions about the fair market value of the land by sales of comparable properties. Two of the expert witnesses for the condemnor were allowed to testify concerning sales of other properties that in one instance occurred almost six years before the court-fixed taking date of June 1968, and in the other instance occurred more than thirteen years before June 1968. When the expert witnesses for the landowner testified, the trial judge excluded any evidence of a comparable property sale that occurred more than five years before the taking date. This resulted in the exclusion of evidence of sales that occurred in 1961, in 1958, and in 1959. The experts by avowal testified that they considered these sales to be very relevant to their opinions of value and undertook to state why the properties were comparable and the effect of the passage of time after the sale. The condemnor attempts to support the exclusion by pointing out that some of the sales were mentioned in the cross-examination of its expert witnesses.

■ The matter of comparability is normally one about which the expert witness expresses his opinion just as he gives his opinion concerning values. Comparability or non-comparability is a matter to be developed by examination of the expert witnesses and its lack of probative value, if any, is arguable to the jury. Commonwealth, Dept. of Highways v. Cain, Ky., 434 S.W.2d 313 (1968).

The trial court excluded all testimony of the per-acre price of four of the sales of comparable properties of less than an acre introduced by the landowner that were admitted in evidence and concerning which the total selling price was stated. In Commonwealth, Dept. of Highways v. Finley, Ky., 371 S.W.2d 854 (1963), we recognized that some comparisons are inherently deceptive in this type of case. Again the deceptive circumstances can be exposed by cross-examination, the probative value is for the determination of the jury.

Of course, in those instances where the professional witness's claim of comparability either as to time of sale, distance from the property the value of which is in issue, or other factors of comparability is incredible in common human experience, exclusion of the offered evidence is proper. In this case, however, that condition is not present. We hold that the excluded evidence should have been admitted for the jury's evaluation. That some of the evidence was mentioned as assumptions in questions propounded on cross-examination does not cure the error of exclusion of the material as evidence.

The landowner also complains that the trial court excluded evidence of the sale price contained in a binding contract of sale or an exercised option in two instances where the properties were comparable, but no deed had been delivered. In Major v. Commonwealth, Department of Highways, Ky., 448 S.W.2d 54 (1969), we held that the valuation for taxation placed upon land by a contract purchaser was binding upon the contract seller who still held the fee title in the land condemned. The relationship between seller and purchaser was father and son. The contract of sale imposed the requirement upon the purchaser to pay all taxes on the property as they became due.

The evidence in the two instances with which we are concerned is hazy. One who offers evidence should be prepared to establish to the satisfaction of the trial judge that the evidence offered is admissible. On retrial, if the landowner establishes that the transaction is an arm's length, bona fide deal and that all conditions necessary to a binding transaction are satisfied and the resulting relationship between the parties is such that both are legally bound to carry out the sale, then the evidence of the sale price is admissible if the expert witness relies upon its comparability, subject only to the limitations on such testimony we have earlier expressed. If, however, both parties are not legally bound to carry out the sale, the offered evidence is in the same category as unaccepted offers to sell and should be excluded.

The motion of the landowner to file a supplemental record is overruled. This opinion renders the questions raised therein academic.

So much of the judgment which adjudicates that the condemnor, Mayfield Independent Board of Education, has the right to condemn the property under the method of condemnation provided in KRS 416.120 is affirmed; the remainder of the judgment is reversed with directions for a new trial on the issue of the amount of just compensation for the landowner, Usher and Gardner, Inc., and for such further proceedings as may be necessary consistent with this opinion.

All concur.