RENDERED: NOVEMBER 1, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2017-SC-000555-DG

DATE 11/26/18 Kim Redmon, DC

LEXINGTON-FAYETTE URBAN COUNTY                    APPELLANT
GOVERNMENT

ON REVIEW FROM COURT OF APPEALS
V.                    CASE NO. 2016-CA-000187-MR
FAYETTE CIRCUIT COURT NO. 15-CI-03477

JUSTIN T. MOORE                                   APPELLEE

## OPINION OF THE COURT BY JUSTICE VENTERS

### REVERSING

The Fayette Circuit Court entered an interlocutory judgment pursuant to KRS 416.610 concluding that Appellant, Lexington-Fayette Urban County Government ("LFUCG"), properly exercised its power of eminent domain in the taking of a permanent easement on the land of Appellee Justin Moore for the public purpose of constructing a storm water culvert and drainage system. Moore appealed.[1] Moore's appeal acknowledged LFUCG's power to condemn, but he argued that by taking only an easement on the 4,518.6 sq. ft. area, rather than a fee simple, LFUCG was not acting in good faith.

---

[1] In *Ratliff v. Fiscal Court of Caldwell County*, 617 S.W.2d 36, 39 (Ky. 1981), we held that a property owner has a right to appeal a circuit court interlocutory order entered under KRS 416.610 determining that the condemning governmental unit has a right to take his property.

The Court of Appeals agreed with Moore that under the circumstances presented here, where the condemned land was left essentially valueless to the landowner following the taking, LFUCG's duty as a condemning authority to act in good faith obligated it to take possession of the land by fee simple rather than by easement.

We granted discretionary review, and for the reasons set forth below, we reverse the Court of Appeals and reinstate the interlocutory judgment of the Fayette Circuit Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns LFUCG's taking, pursuant to Kentucky's Eminent Domain Act (KRS 416.540-416.680), of an interest in a portion of Moore's 2.68-acre residential tract located on Deer Haven Lane in Fayette County. Along the western boundary of Moore's property runs a section of Polo Club Boulevard that terminates before it reaches Deer Haven Lane, which runs along the northern boundary of Moore's property. LFUCG's project will extend Polo Club Boulevard to meet Deer Haven Lane, but it requires the construction of a 16-foot by 4-foot box culvert and a drainage system extending sixty feet on to Moore's property to a pond located on Moore's tract. The area of the land needed for the culvert and drainage system is 4,518.6 sq. ft., a little less than the size of a basketball court, at a corner of Moore's 2.68 acres.

Before the condemnation action began, an appraisal report prepared for LFUCG in connection with the project estimated that Moore's after-taking utility of the section to be occupied by the 4,518-square foot permanent

easement would be 5%. No benefit to the property from the easement was identified.

Based upon the appraisal, LFUCG made an offer to pay Moore for a permanent easement on the 4,518.6-sq.ft. section, and the temporary construction easement on a larger area of 26,504.18 square feet. In response to the offer, Moore questioned why LFUCG would merely take a permanent easement instead of fee simple ownership since the taking would reduce the utility of this section to 5% of its former utility. LFUCG Acquisition Agent, Paul Willard, responded that the permanent easement was "to provide the government access to maintain the culvert for maintenance purposes" and that this was "the same treatment . . . generally on any building project using state or federal funds." Willard did not identify any state or federal authorities requiring that an easement be taken in situations such as this, where the landowner's after-taking utility is minimal. Through his attorney, Moore expressed concern that if he remained the title owner of the area, he could be liable for injuries or accidents caused in connection with the culvert and drainage system. LFUCG argued that the policy is reasonable to avoid the burden of the government owning fee-simple title to hundreds of miniscule plots of land throughout its boundaries. Negotiations produced no settlement, and the condemnation action ensued.

LFUCG filed the action seeking a temporary construction easement and permanent drainage easement on Moore's property. The appointed commissioners found that the proposed permanent easement would diminish

3

the fair market value of Moore's 2.68-acre tract by the sum of $1,287 and that a fair rental value for the area required for the temporary construction easement was $8,000. Moore's answer to the complaint contested LFUCG's right to take the property, a position he later abandoned, and further argued that LFUCG was acting in bad faith or abusing its discretion by seeking to take a permanent easement rather than a fee simple interest.

LFUCG eventually filed a motion for interlocutory judgment pursuant to KRS 416.610[2] requesting that the government be allowed to take the property. At the hearing held pursuant to KRS 416.610(4), Moore did not dispute that the proposed taking was for a public purpose. He continued to assert that LFUCG should be required to take the property by fee simple since its taking as an easement left him with no useful purpose for the property.

LFUCG acknowledged that the remaining utility of this section of Moore's property, after being subjected to the permanent easement, would be 5% and that Moore would not be able to use it because of the box culvert located on it. LFUCG's witness, Willard, testified that he was not aware of any similar-sized culvert which LFUCG had taken as an easement rather than a fee simple interest. Willard testified that LFUCG followed the Kentucky Transportation Cabinet's "standard practice," which required the taking of an easement under

---

[2] In the event the governmental unit's right to condemn under KRS 416.610 is not challenged, KRS 416.610(2) mandates the entry by the circuit court of an order granting the condemnation and the right to possession in favor of the governmental unit, though the statute also permits the landowner to continue to challenge the amount of compensation to which he is entitled.

4

these circumstances and that LFUCG must comply with federal and state guidelines because of funding requirements. LFUCG provided no citations to the federal and state guidelines to support those assertions.

On cross-examination, Willard conceded that he was unaware of any written Transportation Cabinet policy or guideline requiring the acquisition of a permanent easement rather than fee simple. When asked specifically if the purchase of fee simple interest would jeopardize state funding for the project, he replied, "I have no idea whether it would or not." When asked why LFUCG would not want to take the property in fee simple, given the magnitude of the planned structure, he responded, "Basically, the practice is, leave the property in their [the land owner's] name. If, for instance – let's go theoretical – that pipe gets removed at some point in time, there's no need for it. The City doesn't need to own that property then. Yet we would be stuck with it; it'd be unusable."

Following Willard's testimony, Moore requested a continuance to further investigate the Transportation Cabinet's position on funding if a fee simple rather than an easement is taken. Moore pointed out that a factor in determining whether LFUCG acted in good faith or had abused its discretion was whether it was fair to not take a fee simple interest in the property if the state, in fact, allows it. The trial court denied Moore's request for a continuance. The trial court questioned LFUCG about the property owner's liability in the event something occurred on or because of the culvert. LFUCG did not dispute that Moore would remain subject to liability but contended that

5

any such threat of liability was no different than what Moore would be subjected to for an injury that occurred because of the pond, and that by creating a buffer reducing public access to the pond, Moore's threat of liability would actually decrease.

At the close of the hearing, the trial court ruled in favor of LFUCG. The trial court stated that Willard had presented persuasive testimony that taking an easement under these circumstances was the way the state does it, further noting that even if LFUCG "could have done it either way it wanted to, . . . the city has decided to go the easement route. . . . 'We've always done it that way' is rarely a good excuse to me, but I think that is what it is in this case." In its subsequent written interlocutory order, the trial court concluded that LFUCG had satisfied its obligation to negotiate in good faith "to obtain the property interests needed for this public project prior to bringing this action." The trial court did not discuss the easement versus fee simple issue in the order. On appeal, the Court of Appeals held that under the circumstances presented in this case, where the after-taking utility to the landowner approaches zero, that it would be arbitrary and in excess of LFUCG's authority under the Eminent Domain Act to take less than a fee simple interest in the property and, therefore, the circuit court had erred in granting the interlocutory judgment in favor of LFUCG.

## II.  ANALYSIS

A governmental entity generally has broad discretion in exercising its eminent domain authority.  *See Commonwealth, Department of Highways v.*

6

*Burchett*, 367 S.W.2d 262 (Ky. 1963) ("With respect to the public interest, obviously the highway department must be allowed a broad discretion."). The condemnor's decision on the amount of land it requires for present and future needs will be disturbed only if it is unreasonable in relation to the public interest involved. *McGee v. City of Williamstown*, 308 S.W.2d 795, 797 (Ky. 1957). Similarly, the condemnor's determination as to the necessity of the taking is ordinarily conclusive but remains subject to judicial review for arbitrariness or action exceeding its authority. *God's Center Foundation, Inc. v. Lexington Fayette Urban County Government*, 125 S.W.3d 295, 299-300 (Ky. App. 2002). "Although the factors of necessity and public use associated with condemnation are ultimately legal issues, resolution of those issues encompasses factual matters subject to deferential review on appeal." *Id.* at 300.

LFUCG makes three arguments in support of its appeal: 1) that the Court of Appeals failed to give appropriate deference to the circuit court's finding that LFUCG acted in good faith; 2) that the Court of Appeals improperly extended our holding in *Sprint Communications v. Leggett*, 307 S.W.3d 109 (Ky. 2010); and 3) that the Court of Appeals failed to follow controlling precedent and created conflicting demands for local governments by requiring that local governments condemn property in fee simple when a lesser interest would be equally effective. We agree with LFUCG on each point.

LFUCG's authority to exercise the power of eminent domain is not disputed. That authority, however, is subject to the constitutional restrictions

7

that the taking be for "public use" and the payment of "just compensation being previously made." Ky. Const. § 13; *see also* Ky. Const. § 242.[3]

In addition to the foregoing limitations, and of significance in this case, "Kentucky courts have also imposed a duty on the condemnor to negotiate in good faith the acquisition of the property prior to seeking condemnation." *God's Center Foundation*, 125 S.W.3d at 300; *see also Usher & Gardner, Inc. v. Mayfield Independent Board of Education*, 461 S.W.2d 560 (Ky. 1970) ("The real inquiry . . . is whether the condemnor made a reasonable effort in good faith to acquire the land by private sale at a reasonable price.").

The Court of Appeal concluded, contrary to the circuit court's findings, that LFUCG had failed to negotiate in good faith because, despite the extremely limited utility of the property as the servient estate to the government's easement, the government declined to consider any other option.

Whether LFUCG acted in good faith is a finding of fact for the trial court to decide. Appellate review of that finding, along with the trial court's other factual findings, must proceed under the clearly erroneous standard. *See Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky. App. 2001); *Commonwealth*,

---

[3] Kentucky Constitution § 242: "Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them; which compensation shall be paid before such taking, or paid or secured, at the election of such corporation or individual, before such injury or destruction. The General Assembly shall not deprive any person of an appeal from any preliminary assessment of damages against any such corporation or individual made by Commissioners or otherwise; and upon appeal from such preliminary assessment, the amount of such damages shall, in all cases, be determined by a jury, according to the course of the common law."

8

*Transportation Cabinet, Dept. of Highways v. Taub,* 766 S.W.2d 49 (Ky. 1988); CR 52.01. Factual findings are not clearly erroneous if they are supported by substantial evidence. *Id.* Substantial evidence is evidence "which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *See Uninsured Employers' Fund v. Garland,* 805 S.W.2d 116, 118 (Ky. 1991); *Cole v. Gilvin,* 59 S.W.3d 468, 473 (Ky. App. 2001).

> It is within the province of the trial court as the fact-finder to determine the credibility of the witnesses and the weight given to the evidence. Although the factors of necessity and public use associated with condemnation are ultimately legal issues, resolution of those issues encompasses factual matters subject to deferential review on appeal.

*God's Center Foundation,* 125 S.W.3d at 300.

In *City of Bowling Green v. Cooksey,* 858 S.W.2d 190, 192 (Ky. App. 1992), the Court of Appeals construed KRS 416.550[4] as incorporating the principle that a condemning authority "cannot acquire the property in fee simple if it can obtain access or use of the property through other privileges or easements." In *God's Center Foundation,* the Court of Appeals reiterated that holding. 125 S.W.3d at 300. This Court had not explicitly addressed the rule,

---

[4] KRS 416.550: "Whenever any condemnor cannot, by agreement with the owner thereof, acquire the property right, privileges or easements needed for any of the uses or purposes for which the condemnor is authorized by law, to exercise its right of eminent domain, the condemnor may condemn such property, property rights, privileges or easements pursuant to the provisions of KRS 416.550 to 416.670. It is not a prerequisite to an action to attempt to agree with an owner who is unknown or who, after reasonable effort, cannot be found within the state or with an owner who is under a disability."

so at the time LFUCG negotiated its taking with Moore, *Cooksey* imposed upon LFUCG a duty to pursue the taking of an interest less than fee simple ownership if its public purpose could be so achieved. Given that legal environment, it is hard to say that LFUCG was negotiating in bad faith.

Willard testified that federal and state funding sources were primary factors motivating LFUCG's intent to obtain merely an easement rather than fee simple title. That claim was undermined by his admission that he could cite no written policies to that effect. As Moore noted, LFUCG never produced any evidentiary support for Willard's claim. Nevertheless, the circuit court credited Willard's testimony in reaching its finding that LFUCG had acted in good faith. With the rule from *Cooksey* in place, it cannot be said that the circuit court's finding was clearly erroneous.

Moore argues, and the Court of Appeals held, that *Cooksey* was implicitly overruled or abrogated by our decision in *Sprint Communications Co., L.P. v. Leggett*, 307 S.W.3d 109 (Ky. 2010). We disagree. The circumstances of *Leggett* are easily distinguishable and our holdings in *Leggett* had no impact upon the *Cooksey* rule.

*Leggett* is not a condemnation action; it is an abuse of process case. Sprint Communications had tried to use its statutory eminent domain authority to obtain a "permanent utility easement" over the entire half-acre city lot owned by Leggett. Sprint intended to demolish Leggett's building and, on his lot, construct a new facility to house long-distance telephone equipment. Unlike LFUCG, which is a governmental unit possessed of the Commonwealth's

10

sovereign authority to condemn property for a public purpose, Sprint's authority as a "telephone company" under KRS 278.540(2)[5] and KRS 416.150,[6] was limited to the power to condemn land for a "right of way" across private property. *Leggett* stands for the proposition that a "telephone company," with limited condemnation authority, cannot forcibly take the entirety of someone's property by the power of eminent domain by calling the taking a "permanent easement," rather than the fee simple taking it really was. 307 S.W.3d at 115.

Quite to the contrary, Moore owns a rather large residential estate on Deer Haven Lane and only a fraction of that lot is affected by the land LFUCG needs for a drainage easement. Obviously, all of the square-footage to be occupied by the drainage system is affected, but unlike *Leggett,* that is not the entirety of Moore's property. Moore will retain fee simple ownership of his entire tract, while LFUCG's easement occupies but a corner of it.

*Leggett* is further distinguished by the fact that Sprint lacked the legal authority to acquire Leggett's property by eminent domain for the proposed new building, hence, the abuse of process claim. Calling the taking a "right of

---

[5] "Any telephone company authorized to do business in this state may, by contract with any person, construct, maintain and operate telephone lines on and across the real property of that person, and if it cannot obtain the right-of-way by contract it may, except as provided in KRS 416.090, condemn the right-of-way in the manner provided in the Eminent Domain Act of Kentucky."

[6] "Any telephone company desiring to condemn a right-of-way under the authority of subsection (2) of KRS 278.540 shall proceed pursuant to the Eminent Domain Act of Kentucky."

11

way" or a "permanent utility easement" did not alter the reality that Sprint was trying to obtain the entirety of Leggett's property, leaving nothing for him.

We reject the Court of Appeals' conclusion that *Leggett* implicitly overruled *Cooksey*. *Cooksey* holds that the condemning authority cannot take, by the power of eminent domain, a greater interest in land than is necessary for the purpose it seeks to achieve. *Leggett* holds that a condemning authority cannot threaten to take by the power of eminent domain a greater interest in land than the law allows. The two are not inconsistent. The Court of Appeals erred in its application of *Leggett* and in using *Leggett* as a basis for concluding that LFUCG acted in bad faith by refusing to acquiesce to Moore's insistence that the property be taken in fee simple.

*Cooksey* premised its holding on KRS 416.550. See footnote 4. KRS 416.550 does not explicitly contain the rule as stated in *Cooksey*. The rule is, however, reasonably inferred from the express limitation that the interests in the property to be taken must be "needed." It reasonably follows that an estate greater than what is "needed" to achieve the legal purpose cannot be taken. As provided in American Jurisprudence:

> Where an eminent domain statute does not expressly or by implication grant the right to take an estate in fee simple, the interest taken is limited to that necessary to accomplish the purpose or the public use, and no greater estate or property may be taken. In other words, the condemnor only acquires interests sufficient to satisfy the purpose of the taking. Thus, only an easement or qualified fee is taken by the eminent domain proceedings unless: (1) the statute clearly provides for taking a fee, either expressly or by necessary implication; or (2) a fee is necessary for the purposes for which the land is taken.

12

27 Am. Jur. 2d *Eminent Domain* § 789 (citations omitted); *see also*

*Pennsylvania Game Commission v. Renick*, 342 A.2d 824, 827 (Pa. 1975) ("[N]o

more property may be taken than the public use requires [is] a rule which

applies both to the amount of property and the estate or interest to be

acquired. Unless the statute expressly provides that a fee simple absolute

estate must be taken . . . only an easement will be acquired by the condemnor,

if that is all it requires."). We, accordingly, reaffirm the *Cooksey* rule because it

accurately reflects the public policy implicit in KRS 416.550. We reiterate that

when a governmental unit needs to take a small area out of a larger estate, it

should take the least possible interest, such as an easement, so that if the

public purpose for the tract is concluded, it may be reintegrated into the

original estate unburdened by the prior public taking.

### III. CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is

reversed, and the judgment of the Fayette Circuit Court is reinstated.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Michael Keith Horn
Charles Edwards III
Lexington-Fayette Urban County Government
Department of Law

COUNSEL FOR APPELLEE:

Katherine Yunker
Jon Allen Woodall

Brendan Reynolds Yates
McBrayer McGinnis Leslie & Kirkland PLLC