RENDERED: AUGUST 20, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1776-MR

MARY JANET WILLIAMS; JO ANNE                    APPELLANTS
WILLIAMS; PATRICIA L. KUSHINO,
INDIVIDUALLY AND AS TRUSTEE
OF THE PATRICIA L. KUSHINO
REVOCABLE TRUST; AND
BRETT KUSHINO

                         APPEAL FROM HENDERSON CIRCUIT COURT
v.           HONORABLE KAREN LYNN WILSON, JUDGE
                  ACTION NO. 19-CI-00200

HENDERSON COUNTY,
KENTUCKY, FOR AND ON BEHALF
OF THE HENDERSON CITY-
COUNTY AIRPORT; CITY OF
HENDERSON, KENTUCKY; AND
HENDERSON CITY-COUNTY
AIRPORT BOARD                            APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, McNEILL, AND L. THOMPSON, JUDGES.

McNEILL, JUDGE:  Appellants ("Williams family") appeal from the Henderson Circuit Court's interlocutory judgment and order authorizing petitioner, Henderson County ("the County"), to condemn certain property of the Williams family for its airport runway expansion project.  For the following reasons, we affirm.

The Henderson City-County Airport is a general aviation airport which offers chartered flights to the public.  Relevant to this litigation is a runway expansion project to relocate and extend the airport's current runway by 1604 feet to address safety issues caused by the airport's proximity to Highway 136, as well as provide needed updates to the runway.  In the past, the Federal Aviation Administration ("FAA") has allowed the airport to operate under a modification of standards despite the safety concern.  At some point, however, the FAA notified the County it would no longer allow the modification of standards, necessitating the County relocate the eastern portion of the runway.

The runway expansion project began in 2012 when the County petitioned and received a grant from the FAA to extend the runway by 1000 feet.  Previously, the FAA had requested the County perform a runway extension justification study to identify needed updates to the runway.  According to the study, the runway extension was justified due to concern over safety of the existing fleet.  The runway expansion project additionally involves relocating a county

-2-

road, an electric transmission line and acquiring runway safety areas beyond the runway.

In November 2016, the County held a meeting with landholders affected by the runway expansion. It was at this meeting the Williams family learned the County was interested in acquiring a portion of their property. After several meetings with the Williams family, on October 25, 2017, the County made an offer to purchase 4.48 acres of land in fee simple, 2.6 acres of right of way, and 16.38 acres of avigation easement for $149,000. Included with the offer were two independent appraisals.

On February 16, 2018, the Williams family rejected the County's offer by letter. However, they did not make a counter offer. Instead, they notified the County they had obtained their own appraisal and questioned the values assigned to their property interests. They also requested additional information about the project to "make an informed decision on . . . any future requests to purchase fee simple or avigation easement rights from the Williamses."

On November 7, 2018, the County sent a letter to the Williams family, noting it had not received a counteroffer and stating its belief the FAA would allow an increased offer in lieu of litigation if it received one. The Williams family replied, reiterating its requests for additional information before making a counteroffer. On November 23, 2018, the County supplied some of the requested

information, again expressing the need for a counteroffer before the FAA would authorize additional funds.

The Williams family responded on December 14, 2018 with a list of deficiencies in the County's appraiser's reports as well as additional requests of the County, including an updated appraisal addressing the identified deficiencies, removal of a sewer pipe and ditch allegedly constructed on the Williams family property, updated reports concerning the environmental impact of the ditch project, and the production of records. On January 11, 2019, the County replied, stating it had met with the appraiser to go over the issues raised by the Williams family and that the appraiser had valued the property as high as possible.

On January 11, 2019, the County increased its offer to $178,800, noting this was its "last and best offer." When the Williams family failed to respond, the County filed a condemnation action pursuant to Kentucky's Eminent Domain Act (KRS[1] 416.540–416.680) in Henderson Circuit Court on April 14, 2019. On September 18, 2019, the trial court held a bench trial under KRS 416.610(4) on the County's right to take the Williams family property. Following the hearing, the trial court ruled in the County's favor. This appeal followed. We set forth additional facts as necessary below.

---

[1] Kentucky Revised Statutes.

"A governmental entity generally has broad discretion in exercising its eminent domain authority." *Lexington-Fayette Urban Cty. Gov't v. Moore*, 559 S.W.3d 374, 378 (Ky. 2018) (citation omitted). "The condemnor's decision on the amount of land it requires for present and future needs will be disturbed only if it is unreasonable in relation to the public interest involved." *Id*. (citation omitted). "Similarly, the condemnor's determination as to the necessity of the taking is ordinarily conclusive but remains subject to judicial review for arbitrariness or action exceeding its authority." *Id.* (citation omitted).

"Although the factors of necessity and public use associated with condemnation are ultimately legal issues, resolution of those issues encompasses factual matters subject to deferential review on appeal." *God's Ctr. Found., Inc. v. Lexington Fayette Urban Cty. Gov't*, 125 S.W.3d 295, 300 (Ky. App. 2002). This Court reviews a lower court's determination under a clearly erroneous standard and will uphold its ruling if supported by substantial evidence. *Clark v. Bd. of Regents of W. Ky. Univ.*, 311 S.W.3d 726, 731 (Ky. App. 2010).

The Williams family first argues the trial court erred in finding the County acted in good faith prior to bringing the condemnation petition. They contend the County failed to disclose the nature of the easement restrictions prior to condemnation, and that this failure prevented them from making an informed decision concerning the offer and evidences a lack of good faith negotiation.

"Kentucky courts have also imposed a duty on the condemnor to negotiate in good faith the acquisition of the property prior to seeking condemnation." *God's Ctr. Found., Inc.*, 125 S.W.3d at 300. The real inquiry is "whether the condemnor made a reasonable effort in good faith to acquire the land by private sale at a reasonable price." *Usher & Gardner, Inc. v. Mayfield Indep. Bd. of Ed.*, 461 S.W.2d 560, 562 (Ky. 1970).

Here, the evidence supports the trial court's conclusion that the County acted in good faith. The County made an original offer to the Williams family of $149,000 based on two independent appraisals and gave the family adequate opportunity to consider it. The County's final offer of $178,800 was more than the amount ultimately awarded by the commissioners pursuant to KRS 416.580. The County made reasonable attempts to address the Williams family's concerns, including providing additional information, meeting with the family on several occasions, and discussing alleged errors in the appraisal with the appraiser. Borrowing language from our Supreme Court: "It is our opinion that there was a good faith effort 'to agree with the owner . . . on a price,' which is what the statute, KRS 56.463(5), requires." *Coke v. Commonwealth, Dep't of Fin.*, 502 S.W.2d 57, 59 (Ky. 1973).

The Williams family cites no case law requiring a condemning authority to provide "detailed descriptions of the proposed easements." Again, all

that is required is that "the condemnor ma[k]e a reasonable effort in good faith to acquire the land by private sale at a reasonable price." *Usher & Gardner, Inc.*, 461 S.W.2d at 562. Further, Patricia Kushino, a Williams family member, testified during the bench trial that, ultimately, her family did not want the runway expansion project to occur on their property at all, suggesting any further negotiations would have been futile.

The Williams family next argues that the trial court erred in failing to consider its bad faith claims against the County. In its post-trial brief, the Williams family argued the County acted in bad faith by constructing a stormwater drainage ditch and pipeline on their property without permission. In its findings of fact and conclusions of law, the trial court noted the Williams family's argument, and then proceeded to find that the County acted in good faith in attempting to acquire their property.

"Bad faith or fraud is not a statutory ground for denying the right to take. Courts, however, '[n]ecessarily imply the exercise of good faith by governmental authority in using its power to condemn. . . .'" *Commonwealth v. Cooksey*, 948 S.W.2d 122, 123 (Ky. App. 1997) (citations omitted). "A court will deny the right to take only where there has been '[a] gross abuse or manifest fraud.'" *Id.* (citation omitted).

Here, although the trial court did not explicitly address the Williams family's bad faith argument, it clearly considered and implicitly rejected it. While the Williams family asserts the County's trespass onto their property to construct the ditch constitutes bad faith, it cites no authority for this proposition. More importantly, however, there is no evidence the drainage project is related to the airport runway expansion project. Allen Bennett, the manager of the airport, testified that the two projects were unrelated and that the drainage project was not an airport project. It was a project by the Henderson County Flood Mitigation Board undertaken to address flooding in the Geneva lowlands near the airport. We determine the Williams family's argument on this issue is without merit.

Finally, the Williams family contends the trial court erred in holding the County has authority to condemn their property. They argue the County failed to establish the requisite public use and necessity for the project. We disagree.

"The authority to condemn is subject to the constitutional restriction that the taking be for 'public use' and the condemnee receive 'just compensation[.]'" *Kuchle Realty Co., LLC v. Commonwealth*, 571 S.W.3d 95, 99 (Ky. App. 2018), *review denied* (Apr. 11, 2019) (citing KY. CONST. § 13). "Generally, the condemning body has broad discretion in exercising its eminent domain authority including the amount of land to be taken." *God's Ctr. Found., Inc.*, 125 S.W.3d at 299.

"A determination by the condemnor that the taking is a necessity is ordinarily conclusive, but the courts will review the condemning body's exercise of discretion for arbitrariness or action in excess of its authority." *Id.* at 299-300 (citations omitted). "The Courts will not interfere with a decision to condemn unless 'there has been such a clear and gross abuse of discretion as to violate Section 2 of the Constitution of Kentucky, which section is a guaranty against the exercise of arbitrary power.'" *Kuchle*, 571 S.W.3d at 99 (citing *Commonwealth Dep't of Highways v. Vandertoll*, 388 S.W.2d 358, 360 (Ky. 1964)).

While the Williams family asserts the County failed to establish both public use and necessity, they make no argument nor cite any authority that an airport jointly owned by a county and city offering chartered flights to the public is not a public use. "The party challenging the condemnation . . . bears the burden of establishing the lack of necessity or public use and abuse of discretion." *Allard v. Big Rivers Elec. Corp.*, 602 S.W.3d 800, 807 (Ky. App. 2020). Therefore, we decline to find the trial court erred as to this issue.

Instead, they focus on the County's lack of necessity for the airport runway expansion project. They point to testimony from their expert witness that the need for the runway expansion was based on the wrong designation of critical aircraft. However, Ryan Sizemore, an engineer with the firm overseeing the runway expansion project, testified that even without the additional 1000 foot

extension of the runway under the runway expansion project, the County would still have to extend the runway by the 604 feet affected by the FAA's revocation of its modification of standards. Sizemore testified that if the County does not extend the runway after the modification of standards expires, it will substantially affect the nature of the airport. Bennett, the airport manager, claimed the extension is necessary for the airport to remain functional. The Williams family has failed to establish that the County acted arbitrarily or in excess of its authority in seeking condemnation, and the trial court did not err in granting its petition for eminent domain.

For the foregoing reasons, the judgment of the Henderson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:
Randal A. Strobo
Louisville, Kentucky

BRIEF FOR APPELLEE:
J. Christopher Hopgood
Henderson, Kentucky