RENDERED:  MAY 27, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0399-MR

DLX, INC.                                                                                          APPELLANT

APPEAL FROM JOHNSON CIRCUIT COURT
v.              HONORABLE JOHN DAVID PRESTON, JUDGE
ACTION NO. 19-CI-00185

COMMONWEALTH OF KENTUCKY
TRANSPORTATION CABINET
DEPARTMENT OF HIGHWAYS                                                     APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  DLX, Inc., brings this appeal from an April 6, 2021,

Amended Interlocutory Order and Judgment of the Johnson Circuit Court in an

eminent domain proceeding.  We reverse and remand.

On June 26, 2019, the Commonwealth of Kentucky, Transportation

Cabinet, Department of Highways (Cabinet) filed a petition to condemn mineral

rights[1] owned by DLX in approximately 152 acres of real property located in Johnson County, Kentucky. The property was condemned for the purpose of correcting a rockfall hazard on Kentucky Highway 321. In the petition, the Cabinet particularly described the mineral estate in the 152 acres subject to condemnation but also sought to condemn the following:

> Grantor further waives, forever, all rights and claims for those coal reserves[2] outside the boundary of the property conveyed herein which may become sterilized[3] as a result of the construction of the highway and/or construction contemplated herein, including the 150 foot statutory barrier, and the loss of access for many potential mining sites to the main highway.

Petition at 6.

DLX filed an answer and counterclaim. In the counterclaim, DLX specifically claimed:

> 14. a. The Petitioner did not negotiate in good faith with DLX, abused its discretion in so doing, and otherwise acted unreasonably in regard thereto for reasons which include, but are not limited to, the following:
>
> i. The Petition alleges that DLX owns the mineral underneath the tracts to be acquired, which total

---

[1] It appears that the oil and gas rights to this property were separately owned by Kentucky West Virginia Gas. The surface estate was acquired by the Commonwealth of Kentucky, Transportation Cabinet, Department of Highways (Cabinet) in 2015 for $2,499,000.

[2] It was established that DLX, Inc., owned approximately 443 acres of minerals adjacent to the 152 acres of minerals condemned by the Cabinet.

[3] According to expert testimony at the hearing, coal is sterilized when it cannot be removed as a result of some action, involving the surface or mineral estate.

145.16 acres according to the Petitioner's appraisal, and both it and its appraiser noted that DLX also owned other adjacent mineral parcels owned [sic] totaling, together with the 152.302 acres to be acquired, approximately 596 acres, leaving approximately 443.698 acres after the proposed taking.

ii. The Petitioner's appraisal, upon which it claimed to have relied in making an offer of $60,900.00 to DLX, ascribed a value of approximately $400.00 an acre to DLX's mineral rights in the property to be acquired and $0.00 for a decrease in the fair market value of DLX's remaining adjacent mineral tracts, even though the Petition alleges that these interests in those properties are to be acquired:

> [A]ll rights and claims for those coal reserves outside of the boundary of the property conveyed herein which may become sterilized as the result of construction of the highway and/or construction contemplated herein, including the 150 foot statutory barrier, and the loss of access for many potential mining sites to the main highway[,]

nor did it identify or appraise the other interests and damages that DLX would suffer as the result of the proposed taking as alleged elsewhere herein, which are incorporated herein, including the allegations and exhibits found in paragraphs 2 and 3 of this Counterclaim.

. . . .

iv. Neither the Petition nor the Petitioner's appraisal:

1. describe DLX's adjacent properties nor the area constituting the "150 foot statutory barrier[.]"

. . . .

15. In addition to the foregoing failure to negotiate in good faith, and other wrongful conduct that is alleged hereinabove, the Petitioner also failed to conduct these proceedings in good faith, abused its discretion in so doing, and otherwise acted unreasonably in regard thereto for reasons which include, but are not limited to, the following:

a. the Petitioner unreasonably delayed the resolution of the taking from DLX while generously compensating others with interests in the same boundary of land;

b. the Petition lacks Exhibit A, which is supposed to depict the boundaries of the proposed taking, thereby denying DLX important information;

. . . .

d. the Petition does not allege a sufficient basis for transferring the title to the coal in the project area to a private party and allowing them to profit therefrom at DLX's expense;

e. the Petitioner did not enable the commissioners to comply with their statutory requirements which included, but are not limited to, the following:

i. the commissioners did not view the property to be condemned as it cannot,

> without technical assistance seen, quantified, assessed, or "viewed";
>
> . . . .
>
> iii. It is impossible that the commissioners conducted their valuation correctly because they failed to assign a "fair market value of so much of the tract as remains immediately after the taking[,]" which is approximately 443.698 acres, which also means that they did not value all of the interest when assigning a value of $136,000.00 to the blank of the form for "A."

Answer and counterclaim at 21-23, 26-28.

The circuit court held an evidentiary hearing on March 15, 2021, as concerns the Cabinet's right to condemn the subject property. On the next day, March 16, 2021, an order was entered that "overruled" DLX's "objections." Kentucky Revised Statutes (KRS) 416.610. The circuit court held that it was unable to conclude that the Cabinet abused its discretion or acted in an arbitrary or capricious manner. Additionally, the circuit court decided that the Cabinet negotiated with DLX in good faith. The circuit court reasoned, in relevant part, as follows:

> 9)  Applying that standard to the case at bar, it is necessary for the Court to determine if the Plaintiff abused its discretion or if the Plaintiff failed to act in good faith in bargaining with the Defendant prior to filing the lawsuit. The Court notes in this regard that the testimony indicated that the Plaintiff made an offer to the Defendant for $58,000.00 for the mineral interest in the

-5-

tract in question in January 2017. The evidence indicated that the Cabinet will ordinarily wait forty-five days before proceeding further, but in this case the Plaintiff showed remarkable patience, in that no action was filed until August, 2017, some seven months after the initial offer was made. The other further [sic] showed that the Defendant failed to make any counteroffer whatsoever after receiving the initial offer by the Plaintiff. It could scarcely be said that the Plaintiff failed to negotiate in good faith, when the position of the Defendant was essentially that the Plaintiff should bid against itself.

10) The question arises as whether the offer made by the Plaintiff was reasonable or whether it was arbitrary and capricious. The testimony submitted by the Plaintiff's witnesses, Steven Gardner and Daniel Laviers, was to the effect that the coal in question was mineable and merchantable, as was the coal on the tract not taken by the Plaintiff. The witness for the Plaintiff, appraiser Coby Mosely, offered evidence which would call into question whether the coal on the Defendant's property was mineable and merchantable. He stated that the core samples showed seams which ranged considerably in height. He testified that he did not believe the coal in the area not taken was not sterilized because it was non-mineable. He also stated that the thickness of the seams, economic conditions, and historical mining all combined to make the coal on the tract of the Defendant not mineable and merchantable. He questioned why the coal on this tract had not been mined in all of the many years that coal has been mined in Johnson County, Kentucky. The Court takes note of the Defendant's exhibit 10, which was evidence of ten core drillings on the property in question. The Defendant's witnesses testified that the Whitesburg and Van Lear seams were mineable. A review of that exhibit shows that of the ten core drillings sites on the Whitesburg seam, two of them contain no coal whatsoever. Two more contained less than one foot of coal and three more contained between one and two feet of coal. Only one seam has much as [sic] two feet of

-6-

coal and one seam had as much as three feet of coal. On the Van Lear seam, three of the core drilling sites had no coal at all, four of them had less than a foot, and another one had one foot. Only two of the core drilling sites had coal in excess of three feet. One does not have to be a mining engineer to understand that there is a legitimate issue as to whether or not the coal is mineable and merchantable. The Court concludes that the testimony of Mr. Mosley was reasonable and that is provided substantial evidence for the Plaintiff to make the offer it made to the Defendant.

March 16, 2021, Order at 7-9.

Thereafter, by Amended Interlocutory Order and Judgment entered April 6, 2021, the circuit court concluded that the Cabinet had a right to condemn the mineral interests DLX held in the 152 acres of real property, which was particularly described in the order. That description included the following:

Grantor further waives, forever, all rights and claims for those coal reserves outside the boundary of the property conveyed herein which may become sterilized as a result of the construction of the highway and/or construction contemplated herein, including the 150 foot statutory barrier, and the loss of access for many potential mining sites to the main highway.

Amended Interlocutory Order and Judgment at 7. This appeal follows.

It is unquestionable that the Commonwealth of Kentucky possesses the right to take private property for public use through eminent domain. Kentucky Constitution Section § 1, 13, and 242; KRS 416.540 – 680. With eminent domain cases, there are "two considerations, the right to take for a public

-7-

use and just compensation." *Commonwealth v. Cooksey*, 948 S.W.2d 122, 123

(Ky. App. 1997). In this case, we are only concerned with the former

consideration – the right to take for public use. The just compensation issue has

not been resolved by the circuit court and this Opinion does not address that issue.

The condemning governmental body has broad discretion in

exercising its right to take through eminent domain. *Allard v. Big Rivers Corp.*,

602 S.W.3d 800, 807 (Ky. App. 2020). However, the Commonwealth's power of

condemnation does have limitations:

> A determination by the condemnor that the taking is a
> necessity is ordinarily conclusive, but the courts will
> review the condemning body's exercise of discretion for
> arbitrariness or action in excess of its authority. The
> condemnor's decision on the amount of land to be
> condemned will be disturbed only if it is unreasonable in
> relation to the public interest or welfare involved and the
> condemnor may consider the future, as well as the
> present, needs for the taking. Kentucky courts have also
> imposed a duty on the condemnor to negotiate in good
> faith the acquisition of the property prior to seeking
> condemnation.

*Allard*, 602 S.W.3d at 807 (quoting *God's Ctr. Found., Inc. v. Lexington Fayette*

*Urban Cnty. Gov't*, 125 S.W.3d 295, 299-300 (Ky. App. 2002). And, to negotiate

in good faith, the condemnor must make a reasonable effort to obtain the property

at a reasonable price. *See Lexington-Fayette Urban Cnty. Gov't v. Moore*, 559

S.W.3d 374, 379 (Ky. 2018). The circuit court tried this case without a jury.

Kentucky Rules of Civil Procedure (CR) 52.01. Therefore, the circuit court's

findings of fact will only be set aside if clearly erroneous, and issues of law are

reviewed *de novo*. *God's Ctr. Found., Inc.*, 125 S.W.3d at 300.

In its brief, DLX has raised numerous allegations of error:

I.    The trial court erred in concluding that the Cabinet had the right to take, thereby overruling DLX's objections, and its judgment is not supported by the record.

II.   Several of the court's findings were clearly erroneous and it erred with respect to several conclusions, including the failure to make other findings and conclusions.

III.  The court improperly denied DLX's efforts to introduce documents and testimony about the acquisition of the surface from the Christian Appalachian Project.

IV.   The court improperly denied DLX's motion to reschedule the hearing and to shorten the time for the Cabinet to respond to discovery about purged documents.

V.    The court improperly denied DLX's objection to Mr. Mosley's testimony about matters relating to the quantity, quality, mineability, and merchantability of DLX's coal and then improperly equated his opinions with those of Mr. Gardner, a highly experienced mining engineer.

DLX's Brief at iii – v.

Upon review of the record and applicable legal authorities, we conclude that the above allegations of error are without merit, excepting one.[4] Under its first argument, DLX particularly argues that the Cabinet did not have the right to take its property because the Cabinet did not negotiate in good faith as required by law and otherwise acted arbitrarily. For the reasons hereafter set forth, we agree.

As previously noted, in the Commonwealth's petition and the circuit court's Amended Interlocutory Order and Judgment, the property to be condemned included the description of DLX's mineral interest in 152 acres and the following additional description:

> Grantor further waives, forever, all rights and claims for those coal reserves outside the boundary of the property conveyed herein which may become sterilized as a result of the construction of the highway and/or construction contemplated herein, including the 150 foot statutory barrier, and the loss of access for many potential mining sites to the main highway.

Effectively the Commonwealth also condemned a 150-foot statutory barrier on DLX's adjoining property and "those coal reserves outside the boundary of the property conveyed [condemned] herein which may become sterilized[.]"[5]

---

[4] We have conducted a thorough review of the circuit court record and the video-taped hearing to reach our conclusion.

[5] The parties disputed whether the coal in DLX's remaining property had been sterilized by the Cabinet's condemnation of the 152 acres. Although the Cabinet argued that DLX's remaining coal in the 443 acres was not sterilized by its taking of the 152 acres, the Cabinet, nevertheless,

However, it is uncontroverted and admitted by the Cabinet's appraiser, Coby Mosely, that the Cabinet's original offer of $60,900 to DLX for the property did not consider or include the 150-foot statutory barrier or the coal on DLX's remaining property that may be sterilized. Instead, the offer was based solely upon DLX's mineral estate in the 152 acres of property.[6]

To negotiate in good faith, the Cabinet's offer to DLX must have considered all the property or property interests sought to be condemned in order to determine a reasonable value thereof. *See Moore*, 559 S.W.3d at 379. The failure to do so not only constitutes bad faith but would exemplify the quintessence of arbitrary power. Although the issue of good faith presents a question of fact, we are compelled to conclude that the circuit court's finding that the Cabinet negotiated in good faith to be clearly erroneous based upon the above highlighted uncontroverted facts. *See Moore*, 559 S.W.3d at 379. Therefore, we hold that the Cabinet failed to negotiate with DLX in good faith for the acquisition of the

---

sought to condemn DLX's rights in the remaining coal that may have been sterilized. It appears that the Cabinet has taken two inconsistent positions in relation to the remaining coal owned by DLX outside of the boundaries of the condemnation.

[6] The court appointed commissioners ultimately valued the property to be condemned at $136,000 per their report of December 4, 2019. However, their appraisal, likewise, did not address the value of the 150 foot barrier or the sterilized coal as set out in the property description. Additionally, we note that DLX owns rights to access the surface of the property which appear to have been condemned also and were not referenced in the Cabinet's offer or the Commissioner's appraisal. These rights must also be identified and valued at the just compensation trial.

-11-

property before seeking condemnation and acted arbitrarily. We reverse the Amended Interlocutory Order and Judgment and remand for the circuit court to dismiss the petition. KRS 416.610(4).

Nonetheless, this Opinion should not be misconstrued as holding that the Cabinet is without authority to condemn DLX's property for the highway project. To the contrary, we simply conclude that the Cabinet must do so lawfully. It may, of course, begin the process of condemnation anew with an offer to DLX and with the subsequent filing of a petition, if necessary, that comports with the holdings herein.

For the foregoing reasons, the Amended Interlocutory Order and Judgment of the Johnson Circuit Court is reversed and remanded for proceedings consistent with this Opinion.

ALL CONCUR.


BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Wayne F. Collier
Lexington, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE:

Stacy D. Conley
Pikeville, Kentucky